KING v OAKLAND COUNTY PROSECUTOR

Docket Nos. 305299 and 305369. Submitted February 13, 2013, at Detroit. Decided November 14, 2013, at 9:00 a.m.

Barry L. King and Christopher K. King filed separate Freedom of Information Act (FOIA), MCL 15.231 *et seq.*, actions in the Oakland Circuit Court against the Oakland County Prosecutor after defendant refused to provide plaintiffs with public records in her possession concerning the possible involvement of Christopher Busch in the abductions and killings of four children in Oakland County in 1976 and 1977. The court, Wendy L. Potts, J., granted defendant's motion to consolidate the cases. Defendant also moved for summary disposition. The court denied the motion, concluding that defendant had failed to demonstrate that the records in question were exempt from disclosure. Defendant was then ordered to show cause why the records should not be disclosed, and defendant subsequently provided the court with affidavits and other documents supporting her claim that the records were exempt from disclosure under FOIA. The court reviewed those documents in camera. Following that review, the court issued an opinion and order in which it stated that defendant had met its burden of demonstrating an exemption to FOIA disclosure under MCL 15.243(l)(b)(*i*). Plaintiffs moved for reconsideration. The court denied the motion and dismissed plaintiffs' claims. Plaintiffs appealed, and the Court of Appeals consolidated the appeals.

The Court of Appeals *held*:

1. Under MCL 15.243(1)(b)(*i*), a public body may exempt from disclosure investigative records compiled for law enforcement purposes to the extent that disclosure would interfere with law enforcement proceedings. A finding that disclosure of the requested information could hamper an investigation is insufficient to satisfy the law-enforcement-proceedings exemption. In this case, however, the court properly made particularized findings that there was an active, ongoing investigation, and that the requested information regarding Busch was inextricably intertwined with other sensitive information, the release of which would have interfered with the ongoing investi-

gation at the time of the FOIA denials. Accordingly, the circuit court did not abuse its discretion by denying plaintiffs' motion for reconsideration.

2. Under Const 1963, art 1, § 24, crime victims have the right to confer with the prosecution as provided by law. Through the Crime Victim's Rights Act, MCL 780.751 *et seq.*, the Legislature has prescribed the manner by which that constitutional right may be enforced. Specifically, MCL 780.756 enumerates certain duties owed by the prosecuting attorney to crime victims. However, that statute only applies to crimes committed on or after October 9, 1985, and, thus, was inapplicable in this case. Moreover, MCL 780.756 prescribes the duties owed by the prosecuting attorney to each victim after the criminal defendant has been arraigned for the crime. In this case, no charges had been brought and no arraignment had occurred. Accordingly, plaintiffs failed to establish that defendant violated any statutory or constitutional duty to confer with them.

Affirmed.

MURRAY, P.J., dissented from the conclusion in the majority opinion that the circuit court gave a sufficiently particularized decision with regard to whether the law-enforcement-proceedings exemption applied and would have vacated that part of the circuit court's order and remanded for the circuit court to make more particularized findings, but otherwise concurred in the majority opinion. The circuit court's conclusion, that the information concerning Busch was inextricably intertwined with other sensitive information, was conclusory and failed to explain how the release of the requested documents would have interfered with the ongoing investigation.

*Bowen, Radabaugh & Milton, PC* (by *Lisa T. Milton*), for plaintiffs.

*Jessica R. Cooper*, Prosecuting Attorney, *Thomas R. Grden*, Appellate Division Chief, and *Jeffrey M. Kaelin*, Assistant Prosecuting Attorney, for defendant.

Before: MURRAY, P.J., and WILDER and OWENS, JJ.

WILDER, J. This matter involves two consolidated appeals from two cases that were also consolidated in

the lower court.[1] Plaintiffs appeal as of right the circuit court's opinion and order denying their motion for reconsideration of the court's denial of their requests under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*, and dismissing their claims. We affirm in both cases.

These cases arise out of FOIA requests submitted in 2010 to defendant, the Oakland County Prosecutor, for documents regarding Christopher Busch's possible involvement in the abductions and killings of four children in Oakland County in 1976 and 1977, a series of crimes known as the Oakland County Child Killings (OCCK). Plaintiffs, Barry L. King and Christopher K. King, are, respectively, the father and brother of Timothy King, the fourth and final victim of the OCCK. In January and February 1977, after three of the children had been killed, Busch was briefly considered a suspect in the murder of the first OCCK victim, but he was allegedly cleared by law enforcement officials following a polygraph examination. Then, in March 1977, Timothy King was abducted and killed. In November 1978, Busch died in an apparent suicide. The OCCK remain unsolved to this day, but numerous persons other than Busch have been considered as possible suspects over the last 35 years. Defendant denied plaintiffs' FOIA requests for information regarding Busch's possible involvement in the OCCK, and the circuit court upheld the FOIA denials given the existence of an active, ongoing investigation and dismissed the cases.

Plaintiffs argue that the circuit court erred by concluding that the FOIA exception for investigative

---

[1] This Court consolidated the appeals in these two cases "to advance the efficient administration of the appellate process." *King v Oakland Co Prosecutor*, unpublished order of the Court of Appeals, entered August 17, 2011 (Docket Nos. 305299, 305369).

records, the disclosure of which would interfere with law enforcement proceedings, MCL 15.243(1)(b)(*i*), exempted defendant from producing the requested documents and that the circuit court failed to follow the required procedure in making its decision. We disagree. This Court "review[s] for an abuse of discretion a trial court's decision on a motion for reconsideration. A trial court abuses its discretion when it reaches a decision that falls outside the range of principled outcomes." *Luckow Estate v Luckow*, 291 Mich App 417, 423; 805 NW2d 453 (2011) (citation omitted). "This Court . . . reviews de novo a trial court's legal determination in a FOIA case." *Hopkins v Duncan Twp*, 294 Mich App 401, 408; 812 NW2d 27 (2011). "[T]he clear error standard of review is appropriate in FOIA cases where a party challenges the underlying facts that support the trial court's decision. In that case, the appellate court must defer to the trial court's view of the facts unless the appellate court is left with the definite and firm conviction that a mistake has been made by the trial court." *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 472; 719 NW2d 19 (2006). Any discretionary determinations in FOIA cases are reviewed for an abuse of discretion. *Id*.

The purpose of FOIA is set forth in MCL 15.231(2):

It is the public policy of this state that all persons, except those persons incarcerated in state or local correctional facilities, are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act [i.e., FOIA]. The people shall be informed so that they may fully participate in the democratic process.

"FOIA provides that 'a person' has a right to inspect, copy, or receive public records upon providing a written

request to the FOIA coordinator of the public body." *Detroit Free Press, Inc v City of Southfield,* 269 Mich App 275, 290; 713 NW2d 28 (2005). "Under FOIA, a public body must disclose all public records that are not specifically exempt under the act." *Hopkins,* 294 Mich App at 409. See also MCL 15.233(1).

> The Legislature codified the FOIA to facilitate disclosure to the public of public records held by public bodies. However, by expressly codifying exemptions to the FOIA, the Legislature shielded some affairs of government from public view. The FOIA exemptions signal particular instances where the policy of offering the public full and complete information about government operations is overcome by a more significant policy interest favoring nondisclosure. In many of these instances, the Legislature has made a policy determination that full disclosure of certain public records could prove harmful to the proper functioning of the public body. [*Eastern Mich Univ Bd of Regents,* 475 Mich at 472-473 (quotation marks and citations omitted).]

MCL 15.243 permits a public body to exempt certain records and information from disclosure. The exemption at issue here is set forth in MCL 15.243(1)(b)(*i*), which states:

> A public body may exempt from disclosure as a public record under this act any of the following:

> \* \* \*

> (b) Investigating records compiled for law enforcement purposes, but only to the extent that disclosure as a public record would do any of the following:

> (*i*) Interfere with law enforcement proceedings.

In *Evening News Ass'n v City of Troy,* 417 Mich 481, 486; 339 NW2d 421 (1983), our Supreme Court held that a generic determination that the release of

documents would interfere with law enforcement proceedings is not sufficient to sustain a denial under the law-enforcement-proceedings exemption. Relying on provisions in our FOIA and on federal caselaw interpreting the similar federal FOIA,[2] the *Evening News* Court identified six rules that a court should use when analyzing a claimed exemption under FOIA:

1. The burden of proof is on the party claiming exemption from disclosure.

2. Exemptions must be interpreted narrowly.

3. [T]he public body shall separate the exempt and nonexempt material and make the nonexempt material available for examination and copying.

4. [D]etailed affidavits describing the matters withheld must be supplied by the agency.

5. Justification of exemption must be more than conclusory, i.e., simple repetition of statutory language. A bill of particulars is in order. Justification must indicate factually how a particular document, or category of documents, interferes with law enforcement proceedings.

6. The mere showing of a direct relationship between records sought and an investigation is inadequate. [*Id.* at 503 (quotation marks and citations omitted; alterations in original).]

---

[2] 5 USC 552. "Because of the similarity between the Michigan and the federal FOIA, this Court and the Michigan Supreme Court have often looked to federal decisions for guidance in interpreting the various provisions." *Newark Morning Ledger Co v Saginaw Co Sheriff*, 204 Mich App 215, 218; 514 NW2d 213 (1994). We recognize, however, that the law-enforcement-proceedings exemption in the Michigan FOIA is narrower than the comparable federal provision because the federal counterpart allows exemption of documents that "could" reasonably be expected to interfere with law enforcement proceedings, while Michigan allows an exemption only if the release of the documents "would" interfere with such proceedings. See *Herald Co, Inc v Kalamazoo*, 229 Mich App 376, 380; 581 NW2d 295 (1998).

The *Evening News* Court also discussed the procedural difficulties that inhere in determining whether a FOIA exemption applies in light of the asserted confidentiality of the information contained in the requested documents. "Where one party is cognizant of the subject matter of litigation and the other is not, the normal common-law tradition of adversarial resolution of matters is decidedly hampered, if not brought to a complete impasse." *Id.* at 514. Again turning to federal caselaw for guidance, the *Evening News* Court identified a three-step procedure that trial courts should use in analyzing an asserted exemption:

> 1. The court should receive a complete particularized justification as set forth in the six rules above . . . ; or
>
> 2. the court should conduct a hearing in camera based on *de novo* review to determine whether complete particularized justification pursuant to the six rules exists; or
>
> 3. the court can consider allowing plaintiff's counsel to have access to the contested documents *in camera* under special agreement whenever possible. [*Id.* at 516 (quotation marks and citations omitted).]

The use of the conjunctive "or" in this three-step process indicates that "a trial court need not use all three of these alternatives in every case before concluding that an FOIA request is properly denied." *Herald Co, Inc v Kalamazoo*, 229 Mich App 376, 384 n 3; 581 NW2d 295 (1998).

> [T]he Michigan Supreme Court did not mandate application of each step of the three-step procedure. Rather, as appropriate in a particular case, a trial court may follow one *or* more of the three steps. Indeed, the use of step three, allowing a plaintiff's counsel to have access in camera to contested documents, should be strictly limited. [*Id.* at 391 (citation omitted).]

In this case, the record reflects that the circuit court was aware of and followed the proper procedure set forth in *Evening News*. The circuit court had earlier denied defendant's motion for summary disposition because defendant failed to present admissible evidence that the investigation of Busch was active and ongoing and that release of documents relating to Busch would interfere with the investigation. But later, in connection with plaintiffs' motion for an order to show cause why the requested documents should not be produced, the court ordered that defendant could file affidavits or other documents for the court to review in camera. The court subsequently entered a clarifying order allowing defendant to submit documents for in camera review for the purpose of substantiating statements made in affidavits that defendant had already presented to the circuit court. On December 17, 2010, following its in camera review of the affidavits and documents submitted by defendant, the circuit court issued a written opinion and order noting that defendant had

> the burden of demonstrating that disclosure of the requested information **would** "interfere with law enforcement proceedings." MCL 15.243(1)(b)(i); MCL 15.240(4); *Evening News Assn v Troy*, 417 Mich 481, 503 (1983). After thoroughly reviewing the materials presented by Defendant, the Court is convinced that there is an active, open, and ongoing investigation that **could** be compromised by release of any information regarding Christopher Busch. The information submitted by Defendant *in camera* is sufficient to establish that the investigation of the OCCK is active and the information Defendant possesses regarding Christopher Busch is inextricably intertwined with other sensitive information such that release of any information **could** interfere with the investigation. Because Defendant has met its burden of demonstrating an exemption to FOIA disclosure under MCL 15.243(1)(b)(i), the Court concludes

that Plaintiffs are not entitled to compel release of the
information sought in their FOIA requests. [Bold emphasis
added.]

Then, after plaintiffs asked for reconsideration, the
circuit court issued an opinion and order on July 7,
2011, denying reconsideration, dismissing plaintiffs'
claims without prejudice to their ability to submit a new
FOIA request, and closing the case. The court reasoned,
in relevant part:

> This Court is charged with determining whether the
> FOIA exemptions asserted existed at the time Defendant
> denied Plaintiffs' requests in March and May 2010. Based
> on the information Defendant presented *in camera*, there
> was an ongoing investigation involving Christopher Busch
> in March and May 2010 when Defendant denied the FOIA
> requests, and in December 2010 when the Court issued its
> opinion. Further, release of information regarding Christo-
> pher Busch **would** have interfered with the investigation
> during those times. The fact that the Michigan State Police
> released a portion of their records in December 2010 does
> not alter the facts as they existed in March, May, or
> December 2010.
>
> Plaintiffs also argue that subsequent information
> gleaned from the State Police proves that Defendant had
> non-exempt records in its possession in March or May
> 2010. But Plaintiffs fail to explain how the Court can
> conclude that records the State Police provided to Plaintiffs
> are or were in the possession of Defendant. The fact that
> the State Police determined that it had non-exempt records
> does not negate Defendant's assertion that its records are
> all exempt.
>
> Plaintiffs also object to the lack of discovery and claim
> that this Court's review of information submitted *in cam-
> era* violates the standard set by *Evening News Assn v City
> of Troy*, 417 Mich 481 (1983). Plaintiff is correct that
> Defendant bears the burden of proving that the claimed
> FOIA exemptions are applicable and Defendant must pro-
> duce evidence justifying the exemption. *Evening News*,

*supra* at 503. But Plaintiff cites no authority holding that the evidence must be submitted on the public record. The *Evening News* analysis can be accomplished through an *in camera* review of materials presented by the public agency. See *Herald Co v City of Kalamazoo*, 229 Mich App 376, 381 (1988). . . .

For all of these reasons, the Court finds no basis for reconsideration of its December 2010 decision concluding that release of the information sought by Plaintiffs **would** interfere with an active and ongoing investigation. Further, the Court dismisses Plaintiffs' claims without prejudice to Plaintiffs' ability to submit a new FOIA request. [Bold emphasis added.]

A review of the circuit court's orders and opinions reflects that the court properly understood and followed the *Evening News* procedures. The court recognized that defendant bore the burden of proving that the asserted exemption applied and, thus, denied defendant's motion for summary disposition because defendant had not yet submitted affidavits and documents to sustain that burden. The court further recognized that to establish the law-enforcement-proceedings exemption, defendant had to show both that an investigation was open and ongoing and that release of the requested documents "would" interfere with law enforcement proceedings.

Plaintiffs have conceded that an investigation is ongoing,[3] but contend that the circuit court applied an erroneous standard in finding that releasing the documents *could* interfere with law enforcement proceedings. In its December 17, 2010, opinion and order, the circuit court correctly stated that defendant had the "burden of demonstrating that disclosure of the requested information *would* interfere with law enforce-

---

[3] By contrast, the defendants in *Evening News* conceded that the investigation in that case was closed. *Evening News*, 417 Mich at 517.

ment proceedings." (Quotation marks and citations omitted; emphasis added.) However, despite its correct recitation of the proper standard, the circuit court found that the law-enforcement-proceedings exemption applied in this case because the investigation *"could* be compromised by release of any information regarding Christopher Busch." (Emphasis added.) The circuit court further explained that the information regarding Busch was "inextricably intertwined with other sensitive information such that release of any information *could* interfere with the investigation." (Emphasis added.)

If this was the extent of the circuit court's findings, we would agree that the findings would not have supported the circuit court's decision to sustain defendant's refusal to release the requested materials under the law-enforcement-proceedings exception. Our Supreme Court has made it clear that finding that the requested information merely "could" hamper an investigation is insufficient to satisfy the law-enforcement-proceedings exemption under MCL 15.243(1)(b)(*i*). *Evening News*, 417 Mich at 505-508. "Could" and "would" are "obviously not the same thing. The statute is positive. [An] opinion [using "could"] is tentative." *Id.* at 506. However, the circuit court's findings in its opinion and order denying plaintiffs' request for reconsideration constituted a clarification of its December 17, 2010, opinion, by again reciting the correct standard and by indicating that the release of the requested information *would* interfere with an active and ongoing investigation.[4] Therefore, we conclude that the circuit court found that the release of the information *would*

---

[4] While we recognize that this is an unusual occurrence, in *Kokx v Bylenga*, 241 Mich App 655, 658-659; 617 NW2d 368 (2000), this Court stated as follows:

interfere with law enforcement proceedings and that this finding supported its legal determination to sustain defendant's denial of disclosure.

In addition, the circuit court did not make a generic determination that the exemption applied. Following its in camera review of the submitted documents, the court made a particularized finding that did not merely recite the statutory language. It found that the information submitted in camera established that the investigation was active, open, and ongoing; that "law enforcement officials are tenaciously pursuing a resolution to the investigation into these terrible crimes"; and that that the requested information regarding Busch "is inextricably intertwined with other sensitive information . . . ." Thus, unlike in *Evening News*, 417 Mich at 506, the circuit court here gave a reason why disclosure would interfere with law enforcement proceedings. The court's particularized finding regarding why the information concerning Busch fell within the exemption is consistent with the undisputed fact that Busch's death did not end the investigation; indeed, plaintiffs concede that there have been numerous other suspects in the investigation. The court's order denying reconsidera-

A court's decision to grant a motion for reconsideration is an exercise of discretion. Thus, "[i]f a trial court wants to give a 'second chance' to a motion it has previously denied, it has every right to do so, and this court rule [MCR 2.119(F)(3)] does nothing to prevent this exercise of discretion." The rule allows the court considerable discretion in granting reconsideration to correct mistakes, to preserve judicial economy, and to minimize costs to the parties. [Citations omitted; alterations in original.]

To the extent, then, that the trial court erred in its initial ruling on December 17, 2010, by concluding that the release of the requested information "could" interfere with an active and ongoing investigation, the trial court was well within its "considerable discretion" to correct its "mistake" when ruling on reconsideration that the release of the information "would" interfere with an active and ongoing investigation.

tion clarifies that releasing this inextricably intertwined sensitive information would have interfered with the investigation at the time of the FOIA denials. Given the sensitive nature of the requested information, the active and ongoing status of the investigation, and the existence of numerous suspects over the years, it is reasonable to conclude that releasing the requested documents would have had a detrimental effect on the investigation. See *Dickerson v Dep't of Justice*, 992 F2d 1426, 1433 (CA 6, 1993) (noting that releasing documents during the ongoing criminal investigation risked revealing to the crime's true perpetrators what investigative leads the Federal Bureau of Investigation was pursuing, thereby permitting the perpetrators to take steps to destroy or tamper with evidence, intimidate witnesses, or construct false alibis). We conclude that the circuit court made particularized findings that conformed to the requirements of *Evening News*.

Further, the circuit court appropriately reviewed in camera the affidavits and documents submitted by defendant, as allowed under step two of the *Evening News* three-step procedure. Although the circuit court did not permit plaintiff's counsel to review the materials in camera, it was not required to do so. *Kalamazoo*, 229 Mich App at 384 n 3, 391.

Plaintiffs also contend that the circuit court erred by failing to require defendant to separate nonexempt from exempt material and to make the nonexempt material regarding Busch available to plaintiffs. However, this argument is based on a false premise; the circuit court did not find that defendant possessed any nonexempt material regarding Busch. Rather, the circuit court's findings, as previously quoted in this opinion, reflect a determination that all the material regarding Busch was "inextricably intertwined with other

sensitive information," that the release of this material would have interfered with the investigation, and that the requested information therefore fell within the exemption. The circuit court's findings thus establish that the requested material was exempt. In addition, as the circuit court's opinion denying reconsideration noted, the fact that the Michigan State Police Department later released certain records to plaintiffs does not establish that *defendant* possessed nonexempt records at the time of the denials of plaintiffs' FOIA requests. See *State News v Mich State Univ*, 481 Mich 692, 695, 704; 753 NW2d 20 (2008) (stating that "[t]he passage of time and the course of events after the assertion of a FOIA exception do not affect whether a public record was initially exempt from disclosure," and that "[t]here is no indication from the text of . . . the law-enforcement-purposes exemption . . . that the public body's assertion of a FOIA exemption may be reexamined by the circuit court or an appellate court while taking into consideration information not available to the public body when it denied the request").

Because the circuit court clarified on reconsideration that release of the documents *would* impact an ongoing law enforcement investigation, it did not abuse its discretion by denying plaintiffs' motion for reconsideration on July 7, 2011.[5]

Given that the requested material was exempt from disclosure under the law-enforcement-proceedings exemption, it is not necessary to address defendant's argument that the material was also exempt under the

---

[5] As previously noted, the exempt status of the requested materials at the time of the FOIA denials does not preclude plaintiffs from making another FOIA request if they "believe[] that, because of changed circumstances, the record can no longer be withheld from disclosure." *State News*, 481 Mich at 705.

work-product doctrine. Moreover, the circuit court did not address the work-product doctrine. Given the absence of findings regarding that doctrine following the court's in camera review of the affidavits and documents submitted by defendant, the issue regarding the work-product doctrine does not constitute a question of law for which the necessary facts have been presented. Cf. *Carson Fischer Potts & Hyman v Hyman*, 220 Mich App 116, 119; 559 NW2d 54 (1996). Thus, it is not feasible or necessary for this Court to analyze the applicability of the work-product doctrine in this case.

Plaintiffs next argue that the circuit court erred by denying plaintiffs' requests to compel the depositions of Oakland County Prosecutor Jessica Cooper and Chief Assistant Prosecutor Paul T. Walton or to require their availability for examination at the show cause hearing. We disagree. "This Court reviews a trial court's decision to grant or deny discovery for an abuse of discretion." *Shinkle v Shinkle (On Rehearing)*, 255 Mich App 221, 224; 663 NW2d 481 (2003).

Initially, we note that plaintiffs have failed to cite any authority in support of their argument on this issue. "This Court will not search for authority to sustain or reject a party's position. The failure to cite sufficient authority results in the abandonment of an issue on appeal." *Hughes v Almena Twp*, 284 Mich App 50, 71-72; 771 NW2d 453 (2009) (citation omitted). Therefore, this issue is deemed abandoned.

In any event, plaintiffs have failed to establish that the denials of their requests to depose Cooper and Walton or to require their availability for examination at the show cause hearing fell outside the range of principled outcomes. In *Messenger v Ingham Co Prosecutor*, 232 Mich App 633, 636; 591 NW2d 393 (1998), the plaintiff had previously been prosecuted for man-

slaughter. After he was acquitted, the plaintiff filed a FOIA request seeking to obtain his criminal case file. The prosecutor refused to disclose some documents, and the plaintiff filed a FOIA action against the prosecutor. Following an in camera review, the circuit court concluded that some documents were exempt from disclosure. *Id.* The "[p]laintiff had scheduled a deposition of an attorney who had personally participated in preparations for the prosecution of plaintiff, but the court reasoned that the additional discovery would not assist in its in camera review of the documents in question and so decided the case without allowing the deposition to take place." *Id.* On appeal, the plaintiff argued that the circuit court had erred by deciding the case before the scheduled deposition of the assistant prosecutor. *Id.* at 646. This Court held that because the assertion of a public interest in disclosure could not overcome the statutory FOIA exemption at issue in that case, the circuit court was not required to permit the deposition. *Id.* This Court additionally reasoned as follows:

> Further, public policy imperatives for ensuring the effective functioning of the prosecutor's office militate against requiring prosecutors to submit to oral discovery concerning their work on a particular case. See *Fitzpatrick v Secretary of State*, 176 Mich App 615, 617-618; 440 NW2d 45 (1989) ("Department heads and other similarly high-ranking officials should not be compelled to personally give testimony by deposition unless a clear showing is made that such a proceeding is essential to prevent prejudice or injustice to the party who would require it."); *Sheffield Development Co v City of Troy*, 99 Mich App 527, 532-533; 298 NW2d 23 (1980) (separation-of-powers principles counsel against judicial inquiry into the individual motivations of officials acting within other branches of government). In this case, even if plaintiff were entitled to argue the public interest in disclosure of the documents at issue, because

deposing the assistant prosecutor would have amounted to little more than a "fishing expedition" by plaintiff, the trial court would nonetheless have properly decided the case without allowing that deposition to take place. [*Messenger*, 232 Mich App at 646-647.]

See also *Augustine v Allstate Ins Co*, 292 Mich App 408, 419-420; 807 NW2d 77 (2011) ("Michigan's commitment to open and far-reaching discovery does not encompass fishing expedition[s]. Allowing discovery on the basis of conjecture would amount to allowing an impermissible fishing expedition.") (quotation marks and citations omitted; alteration in original).

In this case, plaintiffs have failed to articulate a sufficient reason why they should have been permitted to depose Cooper and Walton or to examine them at the show cause hearing. Plaintiffs merely assert that the credibility of Cooper and Walton was at issue and speculate about possible motives that Cooper or her office may have had for withholding information regarding Busch. Plaintiffs identify no evidence in the record to support these assertions. Nor have plaintiffs identified any disputed factual issues regarding which Cooper or Walton should have been compelled to testify. Plaintiffs have thus failed to establish that deposing these officials was essential to prevent prejudice or injustice, or that a deposition would have amounted to anything more than a fishing expedition. See *Messenger*, 232 Mich App at 646-647.

Furthermore, the circuit court properly made its determination regarding the applicability of the exemption on the basis of an in camera review of the affidavits and documents submitted by defendant, in accordance with the procedures set forth in *Evening News*. There is no basis to conclude that requiring Cooper and Walton to be deposed or to be available for examination at the

show cause hearing would have aided the circuit court's determination regarding whether the requested material fell within the law-enforcement-proceedings exemption.

Plaintiffs' final argument on appeal is that defendant violated a constitutional duty to confer with plaintiffs. We disagree. Generally, an issue must have been raised before, and addressed and decided by, the trial court to be preserved for appellate review. *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005). Plaintiffs first raised this issue when they requested reconsideration of the circuit court's December 17, 2010, decision.[6] "Where an issue is first presented in a motion for reconsideration, it is not properly preserved." *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009). Moreover, plaintiffs' complaints did not allege claims for violations of their right to confer with the prosecutor, but rather asserted claims for alleged FOIA violations. Thus, this issue is not preserved.

This Court reviews unpreserved issues for plain error affecting substantial rights. *In re HRC*, 286 Mich App 444, 450; 781 NW2d 105 (2009). Also, questions of statutory and constitutional interpretation are reviewed de novo. *Dep't of Transp v Gilling*, 289 Mich App 219, 228; 796 NW2d 476 (2010).

"The primary objective in interpreting a constitutional provision is to determine the original meaning of

---

[6] Plaintiffs briefly addressed the constitutional right to confer with the prosecution in their March 30, 2011, brief in support of their motion to compel Cooper's deposition, which was filed a few weeks before their April 21, 2011, request for reconsideration. However, even if the short reference to this issue in the brief in support of the motion to compel was sufficient to raise the issue, that brief was filed *after* the December 17, 2010, opinion and order deciding the case and, thus, it did not timely raise the issue for purposes of preservation.

the provision to the ratifiers, 'we the people,' at the time of ratification." *Nat'l Pride At Work, Inc v Governor*, 481 Mich 56, 67; 748 NW2d 524 (2008). "This Court typically discerns the common understanding of constitutional text by applying each term's plain meaning at the time of ratification." *Id*. at 67-68. "Technical legal terms must be interpreted in light of the meaning that those sophisticated in the law would have given those terms at the time of ratification." *Dep't of Transp v Tomkins*, 481 Mich 184, 191; 749 NW2d 716 (2008).

Regarding the interpretation of statutes, our Supreme Court has explained that

[i]t is axiomatic that statutory language expresses legislative intent. A fundamental principle of statutory construction is that a clear and unambiguous statute leaves no room for judicial construction or interpretation. Where the statute unambiguously conveys the Legislature's intent, the proper role of a court is simply to apply the terms of the statute to the circumstances in a particular case. [*Id*. (quotation marks and citations omitted).]

In 1988, Michigan's Constitution was amended to enumerate the rights of crime victims. *People v Peters*, 449 Mich 515, 524; 537 NW2d 160 (1995). In particular, Const 1963, art 1, § 24 was added, which provides, in relevant part, as follows:

(1) Crime victims, as defined by law, shall have the following rights, as provided by law:

\* \* \*

The right to confer with the prosecution.

\* \* \*

(2) The legislature may provide by law for the enforcement of this section.

The phrase "provided by law" has been consistently construed as vesting in the Legislature the authority to act. *People v Bulger*, 462 Mich 495, 508; 614 NW2d 103 (2000), overruled in part on other grounds in *Halbert v Michigan*, 545 US 605; 125 S Ct 2582; 162 L Ed 2d 552 (2005); see also *Chen v Wayne State Univ*, 284 Mich App 172, 191; 771 NW2d 820 (2009) ("The phrase 'provided by law' vests the authority to act in the Legislature . . . ."). Thus, the language of Const 1963, art 1, § 24 granting to crime victims the right to confer with the prosecution "as provided by law," and the additional language expressly stating that "[t]he legislature may provide by law for the enforcement of this section," is reasonably understood as granting to the Legislature the authority to prescribe the manner of affording to crime victims the constitutional right of conferral with the prosecution.

The Legislature has acted in this area through the Crime Victim's Rights Act (CVRA), MCL 780.751 *et seq.* However, article 1 of the CVRA, MCL 780.751 to MCL 780.775, "appl[ies] only to crimes committed on or after October 9, 1985." MCL 780.775(2). And regarding a prosecutor's duties owed to a victim under article 1 of the CVRA, MCL 780.756 states, in relevant part, as follows:

(1) Not later than 7 days after the defendant's arraignment for a crime, but not less than 24 hours before a preliminary examination, the prosecuting attorney shall give to each victim a written notice in plain English of each of the following:

(a) A brief statement of the procedural steps in the processing of a criminal case.

(b) A specific list of the rights and procedures under this article.

(c) A convenient means for the victim to notify the prosecuting attorney that the victim chooses to exercise his or her rights under this article.

(d) Details and eligibility requirements for compensation from the crime victim services commission under 1976 PA 223, MCL 18.351 to 18.368.

(e) Suggested procedures if the victim is subjected to threats or intimidation.

(f) The person to contact for further information.

(2) If the victim requests, the prosecuting attorney shall give the victim notice of any scheduled court proceedings and any changes in that schedule.

(3) Before finalizing any negotiation that may result in a dismissal, plea or sentence bargain, or pretrial diversion, the prosecuting attorney shall offer the victim the opportunity to consult with the prosecuting attorney to obtain the victim's views about the disposition of the prosecution for the crime, including the victim's views about dismissal, plea or sentence negotiations, and pretrial diversion programs.

Because it is undisputed that the crime at issue here was committed in March 1977 and because article 1 of the CVRA only applies to crimes committed after October 9, 1985, the CVRA does not apply to the present case. Nonetheless, even assuming that the CVRA did apply, plaintiffs have failed to identify any provision that requires a prosecutor to confer with victims *before* charges are filed. MCL 780.756 prescribes the duties owed by the prosecutor to each victim *after* the criminal defendant has been arraigned for the crime. No charges have been filed and no arraignment has occurred in this matter.[7] Accordingly, plaintiffs have failed to establish that defendant has violated any constitutional or statutory duty to confer with plaintiffs, and no plain error affecting substantial rights has been demonstrated.

---

[7] Defendant has represented to this Court that, although the CVRA does not apply given the date restrictions, if charges are filed as a result of this investigation, any crime victims who register with defendant's office will be appropriately consulted during the criminal proceedings.

In light of our resolution of the these issues, it is not
necessary to address the alternative ground for affir-
mance urged by defendant—that plaintiffs lacked
standing to bring these actions.

Affirmed in both cases. A public question being
involved, no costs may be taxed. MCR 7.219(A).

OWENS, J., concurred with WILDER, J.

MURRAY, P.J. (*concurring in part, dissenting in part*).
I concur in the reasoning and conclusions contained in
the majority opinion except for the conclusion that the
circuit court gave a sufficiently particularized decision
as to why the Freedom of Information Act (FOIA), MCL
15.231 *et seq.*, exemption at issue applied. Instead, I
would hold that the circuit court's decision was too
conclusory and, thus, did not comply with the particu-
larized findings requirement set forth in *Evening News
Ass'n v City of Troy*, 417 Mich 481; 339 NW2d 421
(1983), and would vacate that part of the trial court's
order and remand for the trial court to make the
appropriate findings.

No one disputes that under *Evening News* a trial
court is required to give particularized findings of fact
as to why a claimed exemption is appropriate. See, e.g.,
*Post-Newsweek Stations v City of Detroit*, 179 Mich App
331, 336-338; 445 NW2d 529 (1989). The difficult issue
is *what constitutes* a sufficiently particularized finding.
There is certainly no clear-cut answer. Nevertheless, in
canvassing the published opinions issued since *Evening
News*, it seems apparent that the trial court's findings
in this case were not sufficient.

As the majority opinion has described, the trial
court's rationale for upholding the exemption under
MCL 15.243(1)(b)(*i*) was that release of any information

regarding Christopher Busch would compromise the open and ongoing investigation because the Busch information was "inextricably intertwined with other sensitive information . . . ." This finding amounts to nothing more than a partial recitation of the statutory exemption (that an ongoing investigation exists) coupled with a conclusory statement that all the information regarding Busch was "inextricably intertwined" with the other documents in defendant's possession related to the ongoing investigation. Our caselaw requires more than that.

For instance, in *State News v Michigan State Univ*, 274 Mich App 558, 583; 735 NW2d 649 (2007), rev'd in part on other grounds, 481 Mich 692 (2008), our Court held that "a justification must 'indicate factually *how* a particular document, or category of documents, interferes with law enforcement proceedings[,]' " quoting *Evening News*, 417 Mich at 503 (emphasis added). That documents may be intertwined with others containing sensitive information does not explain *how* release of those documents would interfere with the ongoing investigation. Likewise, in *Payne v Grand Rapids Police Chief*, 178 Mich App 193, 201; 443 NW2d 481 (1989), our Court reversed a trial court's decision upholding an exemption because the trial court's opinion—though somewhat lengthy—was composed of entirely conclusory comments. And, contrary to the majority's assertion, even though the trial court in this case properly conducted an in camera review under *Evening News*, it was still required to give particularized findings of fact indicating *why* the claimed exemptions applied. *Newark Morning Ledger Co v Saginaw Co Sheriff*, 204 Mich App 215, 218; 514 NW2d 213 (1994), citing *Post-Newsweek Stations*, 179 Mich App at 337-338. In other words, although it is true that a trial court can use any one of the three *Evening News* procedures to review the

evidence, it must still sufficiently explain its decision after employing one of the three *Evening News* procedures. *Id.* ("Even when the court chooses to conduct an in camera review, the court still must . . . give particularized findings of fact indicating why the claimed exemptions are appropriate.").

For these reasons, I would hold that the trial court did not give sufficiently particularized findings as to why the exemption applies, i.e., *how* release of the documents regarding Busch that are inextricably intertwined[1] with the other documents regarding this ongoing investigation would actually interfere with the ongoing investigation. Of course, as noted earlier, how the trial court complies with this specific requirement is somewhat of an open question. However, it could include a particularization of the different categories or types of documents that were submitted by defendant (e.g., letters, memos, reports, etc.) along with general descriptions as to why divulging the contents of those documents would interfere with the ongoing investigation. See, e.g., *Herald Co, Inc v Ann Arbor Pub Sch,* 224 Mich App 266, 277-278; 568 NW2d 411 (1997). Compounding the problem, while making these findings the trial court must take significant caution to ensure that no specific content is divulged that would cause to occur what the exemption is attempting to prevent, i.e., release of information that would interfere with an ongoing investigation. One possible measure that could be taken to remedy this last concern would be for the trial court to make the particularized findings in camera, and seal those findings (along with the documents

---

[1] And how are these documents inextricably intertwined with the sensitive documents? Do the Busch documents (i.e., documents focusing on Busch) contain reference to other witnesses, suspects, etc., or are references to Busch contained in documents focusing on others aspects of the investigation?

reviewed) for further appellate review. See *Detroit Free Press, Inc v City of Detroit*, 429 Mich 860; 412 NW2d 653 (1987). In any event, I recognize compliance with these measures entails a difficult and delicate task, but it is a task that *Evening News* appears to place on the trial courts of this state.