*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NICHOLE RUGGIERO,

       Plaintiff-Appellant,

v

SHIAWASSEE COUNTY SHERIFF'S OFFICE,

       Defendant-Appellee.

UNPUBLISHED
June 23, 2022

No. 359748
Shiawassee Circuit Court
LC No. 2019-004440-CZ

Before: GLEICHER, C.J., and SAWYER and GARRETT, JJ.

PER CURIAM.

In this Freedom of Information Act (FOIA) lawsuit, Nichole Ruggiero argues that the Shiawassee County Sheriff's Office wrongfully denied her request for certain government e-mails. She also contends that she is entitled to attorney fees and costs arising from this FOIA action. Because the trial court properly granted summary disposition in favor of the Sheriff's Office on these issues, we affirm.

## I. BACKGROUND

This case arises from an investigation into allegations that Kathleen McGuckin, a former Sheriff's Office employee, was diverting probationers and parolees into halfway houses that she owned. In October 2019, McGuckin was fired by Shiawassee County Sheriff Brian BeGole following an independent investigation for "multiple violations of the Sheriff's Office policy and orders."[1] In December 2019, Ruggiero submitted two record requests to the Sheriff's Office under

---

[1] It is unclear to what extent the investigation that led to McGuckin's termination was related to the subsequent investigation into the diversion of probationers and parolees into halfway houses. The investigations do, however, appear to have some connection. In its motion for summary disposition, the Sheriff's Office wrote that the subsequent investigation "arose from information obtained during the investigation that led to [McGuckin's] initial termination."

the FOIA: one seeking e-mail communications concerning the investigation of McGuckin's activities and one seeking various jail records. Both requests were denied.

Ruggiero filed a civil complaint seeking an order compelling disclosure and awarding attorney fees. After the litigation began, in response to a discovery request, the Sheriff's Office turned over the e-mails sought by Ruggiero in the first FOIA request because the investigation to which they pertained had concluded. The parties filed cross motions for summary disposition, with Ruggiero seeking attorney fees, and the Sheriff's Office arguing that Ruggiero was not entitled to attorney fees because the records were exempt from disclosure at the time of the FOIA denial. With respect to the second FOIA request for jail records, the court granted Ruggiero's motion and denied the Sheriff's Office's motion. However, with respect to the first FOIA request for the disclosure of e-mails, the court denied Ruggiero's motion and granted the Sheriff's Office's motion because the initial denial was proper under a FOIA exemption. This appeal pertains only to the first FOIA request.

## II. STANDARD OF REVIEW

Ruggiero argues that the Sheriff's Office withheld documents that were not exempt from disclosure under the FOIA. "In general, whether a public record is exempt from disclosure under FOIA is a mixed question of fact and law." *Rataj v City of Romulus*, 306 Mich App 735, 747; 858 NW2d 116 (2014). We review a trial court's "legal determinations in a FOIA case" de novo. *Bitterman v Village of Oakley*, 309 Mich App 53, 61; 868 NW2d 642 (2015). "De novo review means that we review the legal issue independently" and without deference to the trial court. *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019). Our review of a trial court's factual findings is for clear error. *Bitterman*, 309 Mich App at 61. "A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *Smith v Straughn*, 331 Mich App 209, 215; 952 NW2d 521 (2020) (quotation marks and citation omitted). We also examine discretionary determinations in a FOIA case for an abuse of discretion. *Bitterman*, 309 Mich App at 61. "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *Id*. (quotation marks and citation omitted).

Further, the trial court resolved the parties' motions for summary disposition under MCR 2.116(C)(10). We review a trial court's decision on a motion for summary disposition de novo. *Thomas v City of New Baltimore*, 254 Mich App 196, 200; 657 NW2d 530 (2002). "In reviewing a motion under MCR 2.116(C)(10), this Court must consider all documentary evidence in a light most favorable to the nonmoving party" and may grant the motion "if there is no genuine issue of material fact." *Id*. at 200-201.

## III. ANALYSIS

Ruggiero argues that she is entitled to an award of attorney fees because her FOIA request for the e-mails was wrongfully denied, and her FOIA action had a substantial causal role in the eventual disclosure of the records.

## A. DENIAL OF THE FOIA REQUEST

The FOIA, MCL 15.231 *et seq*., declares that the public policy of this state is to provide citizens with "full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees." MCL 15.231(2). "FOIA is a manifestation of this state's public policy favoring public access to government information, recognizing the need that citizens be informed as they participate in democratic governance, and the need that public officials be held accountable for the manner in which they perform their duties." *Rataj*, 306 Mich App at 748 (quotation marks and citation omitted). In accordance with this policy, the FOIA allows a person to file a written request with a public body to disclose a "public record." MCL 15.233(1). Unless subject to an exemption, an individual who requests a public record "has a right to inspect, copy, or receive copies of the requested public record of the public body." *Id*. See also *Thomas*, 254 Mich App at 201 ("By its express terms, the FOIA is a prodisclosure statute; a public body must disclose all public records not specifically exempt under the act.").[2]

Section 13 of the FOIA provides a list of exemptions that authorize a public body to withhold certain records from disclosure. MCL 15.243. Consistent with the purpose of the FOIA, "[c]ourts narrowly construe any claimed exemption and place the burden of proving its applicability on the public body asserting it." *Detroit Free Press, Inc v City of Southfield*, 269 Mich App 275, 281; 713 NW2d 28 (2005). "The denial of a FOIA request occurs at a definite point in time," and therefore "the appropriate time to measure whether a public record is exempt under a particular FOIA exemption is the time when the public body asserts the exemption." *State News v Mich State Univ*, 481 Mich 692, 703; 753 NW2d 20 (2008).

Relevant to this appeal, the Sheriff's Office relied on the following exemption[3] in denying Ruggiero's FOIA request for the e-mail communications:

---

[2] It is undisputed that the Sheriff's Office is a "public body," and that the e-mails at issue constituted "public records" under the FOIA.

[3] We disagree with Ruggiero's assertion that the Sheriff's Office forfeited its exemption defense by ultimately disclosing the requested e-mails during discovery. According to Ruggiero, if the Sheriff's Office believed the FOIA request was properly denied in December 2019, "the required process in this case would have been to still continue to withhold the responsive records but tell [Ruggiero] to refile a new FOIA request for them." To the contrary, the FOIA does not require a public body to "monitor FOIA requests once they have been denied" to determine if the pertinent records can be disclosed at a later date. *State News*, 481 Mich at 704. Rather, "a party that unsuccessfully requested a public record" may file "another FOIA request for that public record if it believes that, because of changed circumstances, the record can no longer be withheld from disclosure." *Id*. at 704-705. Ruggiero's forfeiture argument would undermine the FOIA's prodisclosure purpose because it would discourage public bodies from disclosing records in the course of litigation that may have properly been exempt at the time of denial but are no longer exempt because of subsequent developments.

A public body may exempt from disclosure as a public record under this act any of the following:

* * *

(b) Investigating records compiled for law enforcement purposes, but only to the extent that disclosure as a public record would do any of the following:

(*i*) Interfere with law enforcement proceedings. [MCL 15.243(1)(b)(*i*).]

First, Ruggiero argues that the requested e-mails are not "investigating records compiled for law enforcement purposes" because the investigation merely concerned an internal employment situation. The law-enforcement-purposes exemption under MCL 15.243(1)(b) is "not limited in application to police investigations of criminal matters." *Yarbrough v Dep't of Corrections*, 199 Mich App 180, 185; 501 NW2d 207 (1993). Rather, it applies to any "ongoing investigation into illegal acts, which investigation could possibly result in civil or criminal action." *Id*.

In an affidavit, Sheriff BeGole stated that he had initiated an investigation into McGuckin's conduct on October 30, 2019, in conjunction with the county prosecutor's office. This investigation "related to a concern about a conflict of interest and/or potential violation of work rules regarding the diversion of parolees / probationers from the County facility to [McGuckin's] personal business." The allegations against McGuckin involved a potential misuse of government resources and implicated possible claims of illegal activity. The trial court found that the ongoing investigation into McGuckin's conduct was for law enforcement purposes:

> The investigation had not been completed, and no conclusion or resolution had been reached, including determining any legal and/or criminal ramifications for any of the parties involved. At the time the denial was made, it was not known whether criminal charges would result from the investigation, and it is not dispositive that no criminal charges were ultimately issued.

When the Sheriff's Office denied Ruggiero's FOIA request, the investigation into the conflict of interest was in its early stages, and it was reasonable to believe, given the nature of the claims, that the investigation "could possibly result in civil or criminal action."[4] See *Yarbrough*, 199 Mich App at 185. Therefore, the trial court did not err by determining that records related to the ongoing investigation were "compiled for law enforcement purposes."

Next, Ruggiero challenges the applicability of the law-enforcement-proceedings exemption under MCL 15.243(1)(b)(*i*). Specifically, she contends that the trial court erred by finding that disclosure of the requested e-mails *could* interfere with a law enforcement proceeding. MCL 15.243(1)(b)(*i*) requires that the defendant show, and the trial court find, that disclosure of

---

[4] In a statement for a November 2019 news article, Sheriff BeGole said that the violations that led to McGuckin's *termination* were "not criminal." However, he did not provide any details on the nature of the subsequent investigation into the improper diversion of parolees and probationers.

the FOIA-requested records *would* interfere with an ongoing law enforcement investigation. *King v Oakland Co Prosecutor*, 303 Mich App 222, 231-232; 842 NW2d 403 (2013). Because "could" and "would" are "obviously not the same thing," it is insufficient for the trial court to merely find that disclosure "could" jeopardize a law enforcement investigation. *Evening News Ass'n v City of Troy*, 417 Mich 481, 506; 339 NW2d 421 (1983).

In its letter denying Ruggiero's FOIA request, the Sheriff's Office wrote that disclosure "*could* alert potential witnesses or targets of the investigation as to the status of the investigation or preliminary findings" and "*would* have a chilling effect on employees' and other witnesses' participation and cooperation with the investigation." (Emphasis added.) Sheriff BeGole explained in his affidavit that McGuckin had been the subject of a previous investigation that resulted in her termination from the Sheriff's Office. During this investigation, McGuckin "was requested to provide her cell phone several times, but ultimately never did." Sheriff BeGole expressed concern that because McGuckin refused to provide information in this initial investigation, she "*would* also attempt to hide or destroy evidence related to the second investigation if she found out about it before it could be completed." (Emphasis added.)

The trial court did not specifically address the use of "could" in the letter denying the FOIA request. However, the court explained that Sheriff BeGole was concerned that "should [McGuckin] become aware of the investigation, she *would* take steps to interfere with witnesses and to dispose of evidence." (Emphasis added.) The court found that this justification provided a sufficiently particularized basis for the denial. By relying on this statement from Sheriff BeGole, and using the language of "would," the trial court applied the proper legal standard—concluding that disclosure of the records *would* have interfered with law enforcement proceedings. See *King*, 303 Mich App at 232-233.

Moreover, the trial court and the Sheriff's Office met their respective burdens to demonstrate that releasing the requested e-mails would have interfered with the investigation into McGuckin's alleged conflict of interest. To properly claim the law-enforcement-proceedings exemption, a public body must show "both that an investigation was open and ongoing and that release of the requested documents 'would' interfere with law enforcement proceedings." *King*, 303 Mich App at 231. Ruggiero does not dispute an investigation was ongoing, but argues that it was unjustified to conclude that disclosure would interfere with the investigation.

In *Evening News*, 417 Mich at 492, our Supreme Court held that a "generic determination" that requested records would interfere with law enforcement proceedings was insufficient to justify a FOIA denial. The Supreme Court set forth six rules, distilled from an analysis of Michigan's FOIA and caselaw interpreting the comparable federal FOIA, that courts should use to review a claim of exemption:

1. The burden of proof is on the party claiming exemption from disclosure.

2. Exemptions must be interpreted narrowly.

3. The public body shall separate the exempt and nonexempt material and make the nonexempt material available for examination and copying.

4.  Detailed affidavits describing the matters withheld must be supplied by the agency.

5.  Justification of exemption must be more than conclusory, *i.e.*, simple repetition of statutory language.  A bill of particulars is in order.  Justification must indicate factually how a particular document, or category of documents, interferes with law enforcement proceedings.

6.  The mere showing of a direct relationship between records sought and an investigation is inadequate.  [*Id*. at 502-503 (quotation marks, citations, and alternations omitted).]

Additionally, recognizing the "procedural difficulties that inhere in determining whether a FOIA exemption applies in light of the asserted confidentiality of the information contained in the requested documents," the *Evening News* Court created a three-step framework that trial courts should use to analyze a claimed exemption.  *King*, 303 Mich App at 228.  This procedure provides that either:

1. The court should receive a complete particularized justification as set forth in the six rules above . . . ; or

2. [T]he court should conduct a hearing *in camera* based on *de novo* review to determine whether complete particularized justification pursuant to the six rules exists; or

3. [T]he court can consider allowing plaintiff's counsel to have access to the contested documents *in camera* under special agreement whenever possible. [*Evening News*, 417 Mich at 516 (quotation marks and citations omitted).]

First, the claimed exemption by the Sheriff's Office properly followed the rules outlined by *Evening News*.  Recognizing that the Sheriff's Office had the burden to prove the applicability of the FOIA exemption, Sheriff BeGole provided an affidavit explaining why the request for the e-mails at issue was denied.  The affidavit demonstrated "factually how a particular . . . category of documents"—the e-mails—would interfere with law enforcement proceedings if released during an active investigation.  See *Evening News*, 417 Mich at 503.  Sheriff BeGole specifically explained that the requested e-mails relating to the conflict-of-interest investigation were withheld because of his concern that McGuckin would attempt to destroy evidence if she found out about the investigation while it was ongoing.  The Sheriff's Office supported this justification for nondisclosure by presenting evidence that McGuckin had actually destroyed evidence in a separate civil lawsuit against Sheriff BeGole.  Specifically, the Sheriff's Office attached an order from this separate lawsuit that granted spoliation sanctions against McGuckin related to the deletion of evidence from her cell phone.  The Sheriff's Office also submitted evidence of a text message from October 2019, which it claims was sent by McGuckin to a potential witness in the conflict-of-interest investigation, in which McGuckin requested that the recipient not provide any information for the Sheriff's Office's investigation.  This evidence provided a particularized, fact-specific basis for concluding that McGuckin *would* have interfered with the investigation if the e-mails were disclosed in December 2019.

In fact, from reviewing the e-mails, it is clear that their disclosure *would* have revealed the nature of the investigation and increased the risk that McGuckin would interfere with the ongoing investigation. For example, an October 2019 e-mail written by the Shiawassee County Jail Administrator to a representative from Professional Consulting Services (PCS), a third-party operator of prisoner reentry programs, asked if "one of my employees has or is housing PCS parolees for [it] could be a conflict of interest."[5] And another e-mail to a Michigan Department of Corrections (MDOC) supervisor asked whether there was any other facility in Shiawassee County where PCS parolees were being housed. Not only would disclosure of these e-mails have revealed the nature of the investigation, but it would have also disclosed the names of potential witnesses with relevant information. Therefore, McGuckin's previous actions during investigations provided a sufficiently particularized justification for asserting that these e-mails were exempt from disclosure.

Ruggiero also argues that Sheriff BeGole's concern about interference with the investigation was pretextual and lacked a factual basis. In part, she contends that McGuckin already knew about the investigation before the FOIA request. McGuckin stated in an affidavit that MDOC officials told her about the conflict-of-interest investigation in October 2019, and therefore the Sheriff's concern about revealing the subject of the investigation was "pointless." Assuming this is true, there was no evidence of record indicating that Sheriff BeGole knew in December 2019 that McGuckin was aware of the additional investigation. McGuckin's knowledge of the investigation, without evidence that Sheriff's Office employees were aware of this knowledge, does not invalidate the concern that Sheriff BeGole expressed in his affidavit that disclosure of the e-mails would compromise the investigation.

Further, Ruggiero asserts that secrecy about the investigation could not have been necessary because Sheriff BeGole made a public statement announcing that the investigation was underway. Sheriff BeGole gave a statement to the media for a November 2019 article that "[t]here is an ongoing investigation into other alleged violations for which I cannot discuss." This cryptic statement did not negate the Sheriff's Office's concern about revealing details of the investigation to McGuckin. As the trial court accurately reasoned, "although Sheriff BeGole made a statement there was an additional investigation underway, he declined to publicly state what the scope of that investigation was, who the targets were, and what evidence [the Sheriff's Office] may be seeking in relation to that proceeding." In particular, the Sheriff's Office had a significant interest in withholding information about the subject matter of its investigation, given the evidence that McGuckin had interfered with witnesses and disposed of records in a separate civil lawsuit. Therefore, the Sheriff's Office sufficiently satisfied its burden to establish that disclosure of the requested e-mails in December 2019 would have interfered with the ongoing law enforcement investigation.

Second, the trial court also had to make particularized findings, in accordance with *Evening News*, that the disclosure of the e-mails would have interfered with the investigation. The trial

---

[5] The e-mail also includes a redacted name of the employee, which all evidence suggests is McGuckin.

-7-

court properly complied with the *Evening News* framework by finding that the Sheriff's Office had given a particularized justification for the denial of Ruggiero's FOIA request.

Our decision in *King* is instructive on this issue. In *King*, 303 Mich App at 224, the plaintiffs sought records from the Oakland County Prosecutor's Office relating to a then-deceased suspect's possible involvement in an unsolved abduction and murder from the 1970s. The prosecutor's office denied the FOIA request, and the trial court upheld that decision, finding that there was an active, ongoing law enforcement investigation, and disclosure of the requested documents would interfere that investigation. *Id*. at 224-225. We affirmed, concluding that the trial court applied the proper legal standard and made a sufficiently particularized finding that disclosure would interfere with law enforcement proceedings. *Id*. at 231-233. The trial court had reviewed the pertinent records *in camera* and determined that their release would compromise the ongoing investigation because the records specific to the suspect were "inextricably intertwined" with other sensitive information from the investigation. *Id*. at 233-234.

In this case, the trial court's finding that disclosure would interfere with a law enforcement investigation was more particularized than the "inextricably intertwined" justification upheld in *King*. The trial court found that Sheriff BeGole's concern that McGuckin would interfere with the investigation was specific and justified by McGuckin's previous actions. Particularly, the court found that McGuckin had a "verified history of destroying evidence in relation to investigations regarding her behavior and the halfway houses she operates." This finding was not clearly erroneous because it was supported, as previously explained, by the evidence of the spoliation sanctions order and text message. Therefore, the trial court had a sufficient basis for concluding that McGuckin had previously destroyed evidence and interfered with witnesses, and that the Sheriff's Office had a particularized concern that McGuckin *would* do so in this case. Accordingly, the Sheriff's Office properly denied the FOIA request at issue under MCL 15.243(1)(b)(*i*).[6]

## B. ATTORNEY FEES AND COSTS

When a party "prevails" completely in its FOIA action, the trial court must award reasonable attorney fees and costs under MCL 15.240(6). *Local Area Watch v Grand Rapids*, 262 Mich App 136, 150; 683 NW2d 745 (2004). When a party only prevails in part, the decision whether to award attorney fees and costs is left to the discretion of the trial court. *Id*. at 151. In this case, Ruggiero's request for an order compelling disclosure of the e-mails was rendered moot when the Sheriff's Office turned over the records in response to a discovery request. However, obtaining an order compelling disclosure is not the only manner in which a party "prevails" in a FOIA action. "The mere fact that plaintiff's substantive claim under the FOIA was rendered moot by disclosure of the records after plaintiff commenced the circuit court action is not determinative of plaintiff's entitlement" to attorney fees under MCL 15.240(6). *Thomas*, 254 Mich App at 202. Rather, a plaintiff prevails "where he is forced into litigation and is successful with respect to the

---

[6] Because we conclude that the law-enforcement-proceeding exemption provided a proper basis for the denial of Ruggiero's FOIA request, we will not address the applicability of the exemptions in MCL 15.243(1)(b)(*ii*) and (*iii*) that were initially cited by the Sheriff's Office as alternative justifications for the denial.

central issue that the requested materials were subject to disclosure under the FOIA, even though the action has been rendered moot by acts of the public body in disposing of the documents." *Id*. at 205 (quotation marks and citation omitted). The proper inquiry is whether the FOIA action was "reasonably necessary to compel the disclosure" and whether the lawsuit had a "substantial causative effect on the delivery" of the requested records. *Id*. at 204.

Ruggiero argues that she is entitled to attorney fees and costs because the continuing prosecution of her lawsuit was reasonably necessary to compel disclosure of the e-mails and had a substantial causative effect on this disclosure. Ruggiero's FOIA request was denied on December 4, 2019, this litigation began on December 11, 2019, and, according to Sheriff BeGole's affidavit, the investigation into McGuckin's activities concluded "after" June 10, 2020. Ruggiero filed a discovery request on December 23, 2020, seeking response to a number of interrogatories. After this request went unanswered, Ruggiero moved to compel discovery. Before the scheduled hearing on this motion, the Sheriff's Office filed an answer and disclosed the requested e-mails, with limited redactions, because "the investigation at issue in [Ruggiero's] first FOIA request ha[d] concluded." Consequently, the trial court found that Ruggiero's lawsuit did not substantially cause the disclosure of the e-mails because the Sheriff's Office produced the documents after the conclusion of the investigation that formed the basis for its denial.

We agree that Ruggiero's lawsuit did not have a "substantial causative effect" on the disclosure of the requested e-mails. Given that the Sheriff's Office properly asserted the law-enforcement-proceedings exemption as the basis for its denial, Ruggiero has not succeeded "with respect to the central issue that the requested materials were subject to disclosure under the FOIA . . . ." *Thomas*, 254 Mich App at 205 (quotation marks and citation omitted). The asserted basis for withholding disclosure of the e-mails—the existence of an ongoing investigation into McGuckin's conduct—supported the claimed exemption. Therefore, the conclusion of this investigation, and not Ruggiero's lawsuit, was the substantial causative effect of the disclosure.[7]

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ Kristina Robinson Garrett

---

[7] The fact that the Sheriff's Office voluntarily disclosed the e-mails during discovery does not mean that Ruggiero's lawsuit was "reasonably necessary to compel the disclosure." Concluding otherwise would mean that Ruggiero had "prevailed" for purposes of MCL 15.240(6), despite our determination that the Sheriff's Office properly withheld the records at issue. As stated earlier, this result would undermine the FOIA's prodisclosure purpose and discourage public bodies from readily disclosing documents that are no longer exempt.