# STATE OF MICHIGAN

# COURT OF APPEALS

RODNEY KAPANGA,

Plaintiff-Appellee,

v

TIFFANY NICOLE KAPANGA,

Defendant-Appellant.

UNPUBLISHED
October 13, 2016

No. 326874
Oakland Circuit Court
Family Division
LC No. 2014-823125-DM

Before: FORT HOOD, P.J., and GLEICHER and O'BRIEN, JJ.

PER CURIAM.

On March 30, 2015, the Oakland Circuit Court dissolved the marriage of Rodney and Tiffany Kapanga. Ms. Kapanga contends that the court rushed the divorce proceedings without adequately considering and actually resolving several contested issues. We discern no such error and therefore affirm.

## I. BACKGROUND

Rodney and Tiffany Kapanga were married on November 21, 2012. Ms. Kapanga gave birth to their son, RK, on December 30, 2013. Eight months later, Mr. Kapanga filed for divorce. Ms. Kapanga filed a countercomplaint in December 2014, seeking spousal support, attorney fees, and payment of her healthcare expenses.

Ms. Kapanga has an Associate's Degree from Baker College and worked as a business consultant prior to the marriage. Following the birth of RK, who suffers from craniosynostosis, Ms. Kapanga ceased working outside the home. She and RK relied financially on Mr. Kapanga, who Ms. Kapanga alleges is a Vice President of Architecture at General Electric, holds a Master's Degree from Harvard, and earns $190,000.[1]

On December 30, 2014, the parties attended an "early case intervention conference" at the Friend of the Court (FOC). The summary order issued thereafter indicated that the parties

---

[1] Ms. Kapanga earlier estimated that Mr. Kapanga earned only "in excess of $75,000.00/year."

"settled" the issue of spousal support. Issues of custody, parenting time, child support, and property division remained open. A scheduling conference was conducted before the trial court one week later. The subsequent "domestic scheduling order" indicated that the parties agreed that Ms. Kapanga would retain custody of RK. Although the parties had not agreed upon visitation, child support and childcare costs, they "strongly believe[d] for those [sic] issues will be resolved." Of relevance, the order indicated that there existed no issue of "alimony" or "property." The court ordered the parties to complete discovery by March 9, 2015, and provided, "This case shall be MEDIATED no later than 3-9-15." The court also referred the matter to the FOC for an investigation into child support and parenting time issues. Trial was scheduled for March 30.

On March 2, the FOC notified the trial court that the parties agreed to a child custody and parenting time arrangement. The parties would share joint legal custody while Ms. Kapanga retained "primary physical custody." Mr. Kapanga agreed to 10 hours of parenting time each week, with no overnights, to be increased when RK reached the age of two. The FOC could make no recommendation regarding child support, however. As stated in a March 16 letter, neither party submitted a "Friend of the Court Case Questionnaire and financial information" for review. The letter advised the parties that they were "left to their respective proofs."

On March 18, 2015, Ms. Kapanga's attorney filed a motion to withdraw. In that motion, counsel noted that the parties had "very little in property." As he viewed the case, "the only unresolved issues remaining appeared to be marital debt and attorney fees." Ms. Kapanga disagreed with this assessment and filed a grievance against him.

On Wednesday, March 25, the court conducted a hearing on defense counsel's motion. At that time, counsel indicated that he had received a proposed judgment from plaintiff's attorney which he had forwarded to his client for her review. Counsel never met with Ms. Kapanga to discuss the judgment because she immediately "accused [him] of a number of things." Ms. Kapanga stated her frustration that counsel had not secured an interim child support order, to which counsel responded that she had not cooperated in filling out the necessary questionnaire. The court advised Ms. Kapanga that it was granting the withdrawal motion and warned, "[Y]ou're going to trial on Monday if you haven't settled, so I just need you to be aware of that."

On Monday, March 30, the parties appeared for the scheduled trial. Plaintiff's counsel indicated at the outset that child support was the only remaining issue. The attorneys had previously calculated support under the Michigan Child Support Formula (MCSF), using Mr. Kapanga's most current W2 and imputing a minimum wage income for a 20-hour work week upon Ms. Kapanga. This resulted in $1,069.63 monthly child support, which Ms. Kapanga believed was too low. Counsel continued that the parties owned no property, having rented their home, and noted that Mr. Kapanga was willing to let Ms. Kapanga have everything else.

Ms. Kapanga was not prepared to go forward with trial. Despite that the court had warned her that trial would not be delayed, Ms. Kapanga made an oral "emergency motion to adjourn." In support of her motion, Ms. Kapanga cited her attorney's failure to secure interim child support and the financial hardship this had caused. In this regard, Ms. Kapanga accused Mr. Kapanga of failing to provide employment verification to avoid a higher child support award

-2-

based on his increased salary after receiving a promotion and taking on a second job. Ms. Kapanga revoked her consent to the parties' earlier parenting time settlement because she believed Mr. Kapanga was living in his car on the nights he did not spend in her home. Ms. Kapanga also complained that mediation had not occurred.

The court denied Ms. Kapanga's request to prolong the proceedings. After verifying that Mr. Kapanga still lived part-time with Ms. Kapanga and part-time with a cousin, the court refused to reduce his parenting time: "Ma'am, listen to me. Unless you terminated his parental rights, he would not get any less than what he has now[.]" As to child support, Ms. Kapanga admitted that she brought no financial information to court to support her challenge. She claimed to be a fulltime student but presented no documentation.

Realizing the futility of the arguments, the court ordered plaintiff's counsel to give Ms. Kapanga a copy of the proposed judgment. The court quickly overruled Ms. Kapanga's objections, noting the brevity of the marriage and denying her claimed right to medical insurance at Mr. Kapanga's expense. The court shut down Ms. Kapanga's complaints regarding her husband's untruthfulness during the marriage as irrelevant to the remaining issues. Ultimately, the court ruled that it would enforce the parties' pretrial agreements and proceed with "the child support number as it is." However, the court advised, should Ms. Kapanga come forward with her proofs, she could seek modification of the parenting time and child support awards.

In a final dilatory effort, Ms. Kapanga contended for the first time that the parties had $20,000 in marital debt that had not been divided. Yet, Ms. Kapanga brought only self-prepared writings to court and no underlying documentation. Ms. Kapanga informed the court of her and Mr. Kapanga's continued sexual relationship and claimed that she "found out today" that she was pregnant. The court agreed to amend the judgment to reflect the possible pregnancy and advised Ms. Kapanga of her right to seek support for any future child, but otherwise declined to postpone.[2] The court then entered the judgment of divorce.

## II. ANALYSIS

In an in pro per brief, Ms. Kapanga raises a jumble of challenges to the court's actions and the divorce judgment. Some are mere statements without any legal analysis or reference to the record. Others are confusing at best. However, we have done our utmost to resolve the issues she has placed before this Court.

Ms. Kapanga first contends that the trial court failed to make findings of fact to support its judgment. MCR 2.517(A)(1) requires a trial court to "find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment." "Brief, definite, and pertinent findings and conclusions on the contested matters are sufficient, without overelaboration of detail or particularization of facts." MCR 2.517(A)(2). "Findings of fact are sufficient if they are '[b]rief, definite, and pertinent,' and 'it appears that the trial court was

---

[2] Although Ms. Kapanga complains on appeal about court's handling of this issue, she never claims that she actually gave birth to a second child.

-3-

aware of the issues in the case and correctly applied the law, and where appellate review would not be facilitated by requiring further explanation[.]' " *Ford Motor Co v Dep't of Treasury*, 313 Mich App 572, 589; ___ NW2d ___ (2015) (citations omitted). "The court may state the findings and conclusions on the record or include them in a written opinion." MCR 2.517(A)(3).

Here, the parties settled issues of custody, parenting time, and spousal support. They agreed before trial that there were no property issues to be decided. And Ms. Kapanga presented no evidence regarding any of these issues. Accordingly, the court was not required to make any factual findings in these regards and the statements in the divorce judgment suffice.

Ms. Kapanga did contest the issue of child support at the bench trial. Before trial, the court referred the matter to the FOC, but the parties failed to provide the information necessary for FOC review. The parties also failed to bring any documentation of their income or expenses to court. The court was left to rely on the only calculation available, which had been prepared by counsel for both sides cooperatively. The court's record findings were more than adequate.

The court did not consider Ms. Kapanga's request for attorney fees on the record. However, Ms. Kapanga did not raise this issue at the bench trial, impliedly accepting the proposed judgment in this regard. Therefore, the trial court was not required to make findings on this issue.[3]

Ms. Kapanga next challenges the trial court's denial of her oral adjournment motion. We review this decision for an abuse of discretion. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). The court placed Ms. Kapanga on notice of the March 30 trial date through the January 6 domestic scheduling order. The court reminded Ms. Kapanga of the trial date at the March 25 hearing and warned her that the trial would not be postponed. Very little discovery was required in this case and yet Ms. Kapanga presented no evidence or witnesses at trial to support her challenges to the proposed divorce judgment. Under these circumstances, the trial court acted within its discretion.

In the table of contents to her appellate brief, Ms. Kapanga inserts unrelated matters into her challenge to the adjournment denial. She contends that the court waived discovery and improperly proceeded when mediation had not occurred. Plaintiff's counsel conceded at trial that mediation did not occur as scheduled, but provided no explanation. We discern no reversible error in this regard, however, as mediation is not mandatory. MCR 3.216(C)(1). And the court did nothing that caused a "waiver of discovery." Ms. Kapanga was on notice of the discovery period and simply failed to conduct any.

---

[3] Contrary to Ms. Kapanga's objection, the denial of attorney fees did not leave her without representation or violate her due process rights. Despite that no award had entered, Ms. Kapanga hired counsel. She lost representation not for financial reasons but because she threatened to file a grievance against counsel after reviewing a proposed judgment that she found unsatisfactory. As Ms. Kapanga did not hire replacement counsel, continuing legal fees were not at issue.

In addition to challenging the court's statement of findings in relation to child support, Ms. Kapanga contends that the court could not enter such an award without a FOC recommendation or an evidentiary hearing. Here, the court referred the matter to the FOC but the parties, including appellant, failed to follow through. The court allowed an evidentiary review on the date of trial, but Ms. Kapanga again failed to meet her burden. The court was left to make a decision based on the evidence of record—the attorneys' MCSF calculation based on information provided by their clients—or allow the divorce proceedings to continue ad naseum. The court acted within its powers when it held the parties to the evidence presented.

Ms. Kapanga asserts that the trial court erred in denying her request for child support retroactive to the date Mr. Kapanga filed the divorce complaint. The court was not permitted to take such action absent a motion for interim or temporary child support. MCL 552.603(3). MCL 552.603(2) provides that a support order only becomes effective on the date of entry and no support order can be applied retroactively beyond the "period during which there is pending a petition for modification."

Ms. Kapanga also contends that the trial court erred in accepting the attorneys' calculation of child support under a formula that imputed income to her, despite that the parties had agreed to her leaving work to care for their child. In *Carlson v Carlson*, 293 Mich App 203, 205-206; 809 NW2d 612 (2011), this Court explained:

> According to the 2004 [MCSF] Manual, the first step in determining a child-support award is to ascertain each parent's net income by considering all sources of income. This calculation not only includes a party's actual income, but it can include imputed income. In other words, a party can be treated as having income or resources that the individual does not actually have. A trial court has the discretion to impute income when a parent voluntarily reduces or eliminates income or when it finds that the parent has a voluntarily unexercised ability to earn. However, a court's decision to impute income must be supported by adequate fact-finding that the parent has an actual ability and likelihood of earning the imputed income.
>
> The 2004 MCSF sets forth a number of equitable criteria that *must* be considered when determining whether to impute income:
>
> (1) Prior employment experience;
>
> (2) Educational level;
>
> (3) Physical and mental disabilities;
>
> (4) The presence of the parties' children in the individual's home and its impact on the earnings;
>
> (5) Availability of employment in the local geographical area;
>
> (6) The prevailing wage rates in the local geographical area;

(7) Special skills and training; or

(8) Whether there is any evidence that the individual in question is able to earn the imputed income. [Citations and quotation marks omitted.]

The trial court found it proper to impute income to Ms. Kapanga in the amount of minimum wage at 20 hours a week. The court commented that this was "the lowest possible income" that could be imputed. Ms. Kapanga made no argument in the lower court other than to question how any income could be imputed to her when she was unemployed. On appeal, she emphasizes her lack of work experience, health issues, and the burden of parenting a child with special needs, but she failed to present any evidence on those issues at the bench trial. Although the MCSF requires the trial court to consider the factors listed above, Ms. Kapanga presented no evidence to support her position at trial for the court's consideration. Accordingly, the trial court did not abuse its discretion by imputing a minimal amount of income.

In any event, the imputation of income was ultimately harmless as plaintiff's counsel indicated this reduced the child support award by only $5 monthly. Ms. Kapanga has an Associate's Degree, has worked before, and does not claim to be unqualified for all types of employment. As noted by the trial court, once Ms. Kapanga finds employment and makes child care arrangements, she can petition the court to revise the child support award to reflect those costs.

Ms. Kapanga also challenges the substance of the trial court's denial of spousal support. We would generally review a lower court's decision whether to award spousal support for an abuse of discretion. *Loutts v Loutts*, 298 Mich App 21, 25; 826 NW2d 152 (2012). As noted, however, the parties agreed before trial that no spousal support would be awarded. Ms. Kapanga did not raise a new challenge at trial to place the issue before the court.

Finally, Ms. Kapanga contends that the trial court judge should be disqualified and the matter reconsidered by a different judge. She accuses the trial judge of being "biased, oppressive and coercive." In order to preserve the issue of disqualification for appellate review, "a motion to disqualify must be filed within 14 days after the moving party discovers the basis for disqualification . . . ." *Kloian v Schwartz*, 272 Mich App 232, 244; 725 NW2d 671 (2006). Because Ms. Kapanga never filed a disqualification motion, our review is limited to "plain error affecting substantial rights." *King v Oakland Co Prosecutor*, 303 Mich App 222, 239; 842 NW2d 403 (2013). Moreover, Ms. Kapanga only points to the court's rulings against her to support her claim, but these are not evidence of bias. See *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 597; 640 NW2d 321 (2001) (quotation marks and citation omitted) ("[J]udicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a deep-seated favoritism or antagonism that would make fair judgment impossible and overcomes a heavy presumption of judicial impartiality."). Thus, Ms. Kapanga fails to establish that disqualification was warranted.

Underlying her claim, Ms. Kapanga emphasizes the court's entry of the proposed judgment presented by plaintiff's counsel. The court was aware that Ms. Kapanga objected to the proposed judgment. The court modified the judgment to reflect Ms. Kapanga's possible pregnancy, but rejected her other challenges. Contrary to Ms. Kapanga's assertion, she did not

have to sign the judgment, which was not a settlement agreement, in order for it to be effective. See MCR 2.602(A)(1) ("Except as provided in this rule and in MCR 2.603, all judgments and orders must be in writing, signed by the court and dated with the date they are signed."). The judgment was properly signed by the trial court judge.

We affirm.


/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher
/s/ Colleen A. O'Brien