# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID ROYCE,

        Plaintiff-Appellee,

v

SUSAN LAPORTE,

        Defendant-Appellant.

UNPUBLISHED
October 9, 2018

Nos. 337549 & 340354
Oakland Circuit Court
LC No. 2007-741737-DC

DAVID ROYCE,

        Plaintiff-Appellee,

v

SUSAN LAPORTE,

        Defendant-Appellant,

and

MARCIA C. ROSS,

        Appellee.

No. 339903
Oakland Circuit Court
LC No. 2007-741737-DC

Before: JANSEN, P.J., and METER and STEPHENS, JJ.

PER CURIAM.

In these consolidated appeals, defendant-mother appeals as of right three orders pertaining to proceedings in her child custody dispute with plaintiff-father. In Docket Nos. 337549 and 340354, defendant appeals as of right two orders denying her motions for increased parenting time. In Docket No. 340354, defendant appeals as of right the trial court's order determining the fees of a court-appointed guardian-ad-litem (GAL), and apportioning those fees between the parties. We affirm in all three appeals.

-1-

# I. RELEVANT FACTUAL BACKGROUND

The parties' child was born out-of-wedlock in 2007. The parties have been involved in highly contentious custody proceedings since the child's birth. Defendant has accused plaintiff of being physically, sexually, and emotionally abusive to the child, and plaintiff contends that defendant is pathologically delusional and psychologically abusive to the child, causing him to internalize defendant's delusional beliefs about plaintiff. Defendant had primary physical custody of the child until 2016. Plaintiff's parenting time was frequently held in abeyance pending investigations by law enforcement and Child's Protective Services (CPS) into defendant's many allegations of abuse, which have generally been found to be either unsubstantiated or exaggerated.

In 2016, the parties filed motions to modify the custody arrangement or suspend or restrict each other's parenting times after defendant refused to allow plaintiff to exercise parenting time over Father's Day weekend, and defendant again filed a police report accusing plaintiff of abuse. The trial court issued an interim order placing the child with plaintiff and allowing defendant supervised parenting time. In August 2016, the trial court held a four-day evidentiary hearing, following which it issued a detailed opinion and order on September 29, 2016, changing the parties' prior custody arrangement. The court continued parenting time as set forth in the interim order, and defendant was allowed supervised therapeutic parenting time twice weekly. The court's order stated that "[o]nce a determination is made that unsupervised parenting time is appropriate and in [the child's] best interest, parenting time shall be as follows unless a transitional period is recommended prior to this schedule taking effect." During the school year, defendant would have parenting time from Monday after school to drop-off at school on Wednesdays," and alternating weekends. Plaintiff would have parenting time from Wednesday after school to Friday drop off at school, and alternating weekends. Parents would have alternating weeks during summer vacation. The order also included a holiday schedule. The trial court urged the parties to move forward and to cease their conflict for the child's sake.

Defendant construed the court's order as awarding her parenting time on an equal 50/50 basis as soon as she was able to have unsupervised parenting time. The parties agreed in a Friend of the Court (FOC) review in December 2016 to replace defendant's Wednesday evening supervised visit with a restaurant dinner, and to allow defendant unsupervised parenting time on Saturdays. Defendant moved for implementation of a 50/50 parenting time schedule, arguing that the FOC's approval of unsupervised visitation satisfied the condition for the equal parenting time arrangement. The trial court held a hearing on December 21, 2016, which plaintiff was unable to attend. The court did not implement 50/50 parenting time, but did adopt the parties' FOC agreement regarding defendant's two unsupervised visits per week, and also allowed a holiday visit for defendant. After the December hearing, the assigned judge, Judge Elizabeth Pezzetti, retired from the bench and the case was reassigned to Judge Lisa Langton.

In 2017, defendant "renewed" her motion for implementation of the 50/50 parenting time schedule. Plaintiff moved to restrict defendant's parenting time and for other relief. Plaintiff alleged that the child wanted to resume supervised parenting time because his visits with defendant had caused severe anxiety. Judge Langton reinstated supervised parenting time for defendant in an order dated March 6, 2017. Defendant appealed that order in Docket No. 337549. While appellate proceedings were pending, defendant again moved for 50/50 parenting

time, which the trial court again denied on September 13, 2017. Defendant filed a claim of appeal from that order in Docket No. 340354.[1]

In the interim, the court-appointed GAL for the minor child, who had served from 2011 to 2016, filed a petition for court approval of her GAL fees. In an order dated July 3, 2014, the trial court ordered the GAL's fees to be

> shared equally by the parties, except if she believes the need for her services is attributable to the conduct of one party. The Guardian Ad Litem shall have the sol[e] discretion and right to reallocate payment of her fees if she believes the need for her services is attributable to the conduct and/or intransigence of one party or if either party is acting unreasonable [sic] or not "in good faith" creating unnecessary difficulty in resolving issues or if the Guardian Ad Litem concludes that her services are being disproportionately utilized by a party.

The GAL did not issue any bills or invoices for her services until 2016, after her services were terminated. At the December 21, 2016 hearing, Judge Pezzetti stated that her successor would resolve issues pertaining to the GAL's fees. However, when the GAL raised the issue of reapportioning fees 70 percent to defendant, and 30 percent to plaintiff, Judge Pezzetti stated that she would deny reapportionment. The GAL argued that the successor judge should decide the reapportionment issue, but Judge Pezzetti disagreed, explaining, "Whoever is doing the hearing doesn't know the case like I do, so I think that's what it's going to be." Judge Pezzetti's order stated:

> There shall be no re-apportionment of any fees paid to the GAL per the order of July 2, 2014, as the court finds no need to change the apportionment from 7-2-14 to end of the GAL's tenure in the case.

---

[1] This Court originally dismissed defendant's claim of appeal in Docket No. 337549 "for lack of jurisdiction because the orders dated March 1, 2017, and entered on March 6, 2017 are not final orders as defined in MCR 7.202(6)." *Royce v LaPorte*, unpublished order of the Court of Appeals, entered April 11, 2017 (Docket No. 337549). This Court also dismissed defendant's claim of appeal in Docket No. 340354 for lack of jurisdiction because "the September 13, 2017, order appealed from is not a final order as defined in MCR 7.202(6)." *Royce v LaPorte*, unpublished order of the Court of Appeals, entered October 4, 2017 (Docket No. 340354). Defendant appealed those decisions to our Supreme Court, which vacated this Court's orders and remanded to this Court for consideration of whether the orders "may affect custody of a minor within the meaning of MCR 7.202(6)(a)(*iii*), or otherwise be appealable by right under MCR 7.203(A)." *Royce v LaPorte*, 501 Mich 1025 (2018). On remand, this Court issued an opinion holding that "both trial court orders in question are final orders under MCR 7.202(6)(a)(*iii*) as postjudgment orders in this domestic relations action that affect the custody of a minor." *Royce v LaPorte*, unpublished per curiam opinion of the Court of Appeals, issued May 8, 2018 (Docket Nos. 337549 & 340354), slip op at 1. Therefore, both appeals were permitted to proceed as of right.

A hearing to determine the reasonableness of the GAL's requested fees was scheduled for April 24, 2017.

The GAL moved for clarification regarding the scope of the fee hearing. Judge Pezzetti's successor, Judge Langton, issued an order that restated the GAL's requested apportionment of fees, with $64,055.05 allocated to plaintiff and $39,748.79 to defendant, but did not approve or disapprove this request. The court cancelled a motion hearing scheduled for April 12, 2017, and also the scheduled evidentiary hearing. The trial court allowed the parties to "submit specific written objections to any item in the GAL's itemized billing within 30 days of this order's date." The parties were required to "limit their objections to the reasonableness of any work performed or hours expended." The court said it would issue a written opinion addressing the parties' objections, and schedule oral arguments if necessary. Defendant submitted objections, arguing that Judge Pezzetti's decision barring reapportionment was binding on Judge Langton pursuant to the doctrines of law-of-the-case, res judicata, and collateral estoppel.

Judge Langton reduced the GAL's total bill to $39,182.50, representing "the total amount billed between January 12, 2015 and August 25, 2016." Judge Langton also apportioned the bill, holding plaintiff responsible for $11,781.50, and defendant responsible for $21,734.34, on the basis that the GAL's services were necessitated more by defendant's unreasonable conduct throughout the case than plaintiff's conduct. The court found all of plaintiff's and defendant's objections to be without merit. Defendant moved for reconsideration of the order, reiterating her argument that Judge Pezzetti's order precluded reapportionment of the GAL fees. Judge Langton denied the motion, stating:

> Reading the July 2014 and December 2016 orders in conjunction with the GAL's December 2016 motion does not sustain Defendant's objection. It appears that the GAL's motion sought to change the baseline apportionment from 50/50 to 70/30. After reviewing of the transcript, it appears that the December 2016 order denied changing the default equal reapportionment and not the language giving the GAL sole discretion apportioning her fees based on the conduct of the parties. It did not deprive the GAL's authority to apportion fees based upon the conduct of each party.

In Docket No. 339903, defendant appeals as of right Judge Langton's order awarding and apportioning the GAL fees.

## II. DOCKET NOS. 337549 & 340354

Defendant challenges the trial court's March 2017 and September 2017 orders denying her motions for increased parenting time.

"Three different standards govern our review of a circuit court's decision in a child-custody dispute. We review findings of fact to determine if they are against the great weight of the evidence, we review discretionary decisions for an abuse of discretion, and we review questions of law for clear error." *Kubicki v Sharpe*, 306 Mich App 525, 538; 858 NW2d 57 (2014). Under the great weight of the evidence standard, the trial court's findings are affirmed unless the evidence clearly preponderates in the opposite direction. *Mitchell v Mitchell*, 296

Mich App 513, 519; 823 NW2d 153 (2012). The trial court's credibility determinations are accorded deference give its superior position to make such determinations. *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011). Clear legal error exists when the trial court errs in choosing, interpreting, or applying the law. *Sturgis v Sturgis*, 302 Mich App 706, 710; 840 NW2d 408 (2013).

The Child Custody Act of 1970 (CCA), MCL 722.21 *et seq.*, governs procedures for modifying child custody orders. MCL 722.27(1)(c) provides:

> If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may do 1 or more of the following:
>
> * * *
>
> (c) Subject to subsection (3), modify or amend its previous judgments or orders for proper cause shown or because a change of circumstances until the child reaches 18 years of age . . . . The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child.

"Under the CCA, if a child custody dispute has arisen, the circuit court may, in the best interests of the child, modify its previous orders or judgments 'for proper cause shown or because of change of circumstances . . . .'" *In re AP*, 283 Mich App 574, 600; 770 NW2d 403 (2009), quoting *Vodvarka v Grasmeyer*, 259 Mich App 499, 508-509; 675 NW2d 847 (2003). "Thus, the party seeking a change of custody must first establish proper change or circumstances by a preponderance of the evidence." *In re AP*, 283 Mich App at 600. "Although the threshold consideration of whether there was proper cause or a change of circumstances might be fact-intensive, the court need not necessarily conduct an evidentiary hearing on the topic." *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009). To constitute proper cause meriting a consideration of a custody change, there must be appropriate grounds that have or could have a significant impact on the child's life such that a reevaluation of custody should be made. *Vodvarka*, 259 Mich App at 511. To constitute a change of circumstances meriting a consideration of a custody change, there must have been a change in conditions pertaining to custody since the entry of the last custody order that has had or could have a significant impact on the child's well-being. *Corporan*, 282 Mich App at 604.

Defendant's arguments challenging the March 2017 and September 2017 orders denying her motions for increased parenting time are based on her contention that the September 29, 2016 order required implementation of or transition to a 50/50 parenting time schedule when defendant satisfied the conditions of the order. In accordance with this interpretation of the order, defendant argues that the orders appealed in Docket Nos. 337549 and 340354, denying her motions to implement the 50/50 parenting time schedule, should be construed as orders modifying the September 2016 order by changing custody from the ordered equal parenting time arrangement to the restrictive parenting time schedules enforced by the March 2017 and

-5-

September 2017 orders. Defendant therefore contends that the March 2017 and September 2017 orders were erroneously entered without the trial court first finding proper cause or a change of circumstances to justify a change of custody, and erroneously effectuated a change of custody without the court making necessary findings regarding the statutory best-interest factors. Defendant also maintains that the trial court erroneously deferred to the FOC's recommendation when making the March 2017 and September 2017 custody decisions, in dereliction of its duty to make independent findings.

Defendant's interpretation of the September 29, 2016 order is based on the trial court's statement in that order that "[o]nce a determination is made that unsupervised parenting time is appropriate and in [the child's] best interest, parenting time *shall* be as follows unless a transitional period is recommended prior to this schedule taking effect," followed by a schedule dividing weekdays and alternating weekends during the school year, and alternating weeks during summer vacation. "The term 'shall' is mandatory." *Kalin v Fleming*, 322 Mich App 97, 101; 910 NW2d 707 (2017). However, defendant improperly interprets this order as mandating a future parenting time schedule without satisfying the statutory requirements for modifying custody. The order contains the conditional phrase, "Once a determination is made." This phrase necessarily indicates that the trial court must initially make the required determination, and it must do so in compliance with the CCA. The only reasonable interpretation of this phrase is that defendant must comply with statutory requirements for modifying a custody order. Based on these requirements, we conclude that the September 29, 2016 order did not provide defendant with a shortcut method for establishing grounds for implementing a 50/50 parenting time schedule. Additionally, the March 2017 and September 2017 orders should not, as defendant suggests, be construed as orders changing custody from a 50/50 parenting time arrangement to the restrictive arrangement. Indeed, this Court concluded that the March 2017 and September 2017 orders are final orders under MCR 7.202(6)(a)(*iii*) because they are orders denying defendant's motion "seeking a change from plaintiff having primary physical custody of the minor child to the parties sharing equal physical custody." *Royce v LaPorte*, unpublished per curiam opinion of the Court of Appeals, issued May 8, 2018 (Docket Nos. 337549 & 340354), slip op at 2.

Defendant argues that the trial court erred by relying on the FOC recommendation as the basis for its decision. In *Harvey v Harvey*, 470 Mich 186, 193; 680 NW2d 835 (2004), our Supreme Court held that a negotiated child custody agreement between parties "does not diminish the court's obligation to examine the best interest factors and make the child's best interests paramount." The Court further stated:

> [N]either the Friend of the Court Act nor the domestic relations arbitration act relieves the circuit court of its duty to review a custody arrangement once the issue of a child's custody reaches the bench. The Friend of the Court Act states that the circuit court "shall" hold a hearing de novo to review a friend of the court recommendation if either party objects to that recommendation in writing within twenty-one days. MCL 552.507(5). [*Harvey*, 470 Mich at 193.]

Defendant argues that the trial court improperly "deferred" to the FOC recommendations at the hearings on December 21, 2016, March 1, 2017, and September 13, 2017, because it modified the September 2016 order without making independent findings. This argument misconstrues

the procedural events of this case. The September 2016 order did not award an equal parenting time arrangement; it stated that the parties could progress to this arrangement "[o]nce a determination is made that unsupervised parenting time is appropriate and in [the child's] best interest." As explained, it was incumbent upon defendant to satisfy "the initial burden of proving either proper cause or a change of circumstances sufficient to warrant reconsideration of the custody decision." *Bowling v McCarrick*, 318 Mich App 568, 569-570; 899 NW2d 808 (2016). The trial court was not required to hold an evidentiary hearing to decide this threshold issue. *Corporan*, 282 Mich App at 605. Defendant's showing of grounds to reevaluate custody consisted of conclusory statements by two therapists. The trial court declined to further consider a change of custody or parenting time because it determined that the necessary showing had not been made. Defendant's characterization of these events as modifying the September 2016 custody award in deference to the FOC is factually and legally erroneous. She therefore fails to establish any error.

Defendant also argues that the trial court improperly relied on the FOC's recommendation, which defendant contends was inadmissible hearsay. A trial court's decision to admit evidence is generally reviewed for an abuse of discretion. *In re Utrera*, 281 Mich App 1, 15; 761 NW2d 253 (2008). "When an evidentiary question involves a question of law, such as the interpretation of a statute or court rule, our review is de novo." *Id*. Defendant, however, did not raise any hearsay objections at either the March 2017 or September 2017 hearings. Therefore, defendant did not preserve her hearsay argument. Unpreserved issues are reviewed for plain error affecting the party's substantial rights. *Marik v Marik*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 333687); slip op at 3.

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is not admissible unless it falls within an exception provided for by the rules of evidence. MRE 802. MRE 1101(a) provides that the Rules of Evidence "apply to all actions and proceedings in the courts of this state." MRE 1101(b)(9) provides an exception for "[t]he court's consideration of a report or recommendation submitted by the friend of the court pursuant to MCR 552.55(1)(g) or (h)." MCL 552.55(1)(g) imposes on the FOC the duty "[t]o investigate all relevant facts, and to make a written report and recommendation to the parties and to the court, regarding child custody or parenting time, or both, if ordered to do so by the court." MCL 552.55(1)(h) pertains to child support orders. An FOC report "is not admissible as evidence unless both parties agree to admit it in evidence." *Duperon v Duperon*, 175 Mich App 77, 79; 437 NW2d 318 (1989). Although the trial court may consider an FOC report in making its decisions, it must reach its own conclusions on properly received evidence. *Truitt v Truitt*, 172 Mich App 38, 42-43; 431 NW2d 454 (1988).

As discussed earlier, defendant misconstrues the March 2017 and September 2017 orders as modifications of an equal parenting time arrangement to a restrictive custody arrangement in which defendant has only limited and supervised parenting time. These orders are, in fact, orders denying defendant's motions to modify an existing custody and parenting time arrangement by substantially expanding her parenting time. The trial court did not change custody by deferring to hearsay statements in the FOC report, but declined to change custody because defendant failed to establish changed circumstances or other sufficient cause. Therefore, we reject this claim of error.

Defendant argues that her due process rights were violated when the trial court sua sponte ordered consolidation of hearings on defendant's motion to implement the 50/50 parenting time order with plaintiff's motion to restrict parenting time in March 2017. Because defendant did not object to the trial court's joint consideration of these motions, this issue is unpreserved. Issues concerning the application of statutes and court rules are reviewed de novo. *Estes v Titus*, 481 Mich 573, 578–579; 751 NW2d 493 (2008). Generally, "[t]his Court reviews constitutional issues de novo as questions of law." *Kampf v Kampf*, 237 Mich App 377, 381; 603 NW2d 295 (1999). However, unpreserved constitutional issues are reviewed for plain error affecting substantial rights. *King v Oakland Co Prosecutor*, 303 Mich App 222, 239; 842 NW2d 403 (2013).

"A natural parent possesses a fundamental interest in the companionship, custody, care, and management of his or her child, an element of liberty protected by the due process provisions in the Fourteenth Amendment of the United States Constitution and article 1, § 17, of the Michigan Constitution." *Frowner v Smith*, 296 Mich App 374, 381; 820 NW2d 235 (2012). "Due process . . . generally requires notice of the nature of the proceedings, an opportunity to be heard in a meaningful time and manner, and an impartial decision maker." *Okrie v Michigan*, 306 Mich App 445, 469; 857 NW2d 254 (2014). In regard to notice, "[d]ue process is satisfied when interested parties are given notice through a method that is reasonably calculated under the circumstances to apprise them of proceedings that may directly and adversely affect their legally protected interests and afford them an opportunity to respond." *Wortelboer v Benzie Co*, 212 Mich App 208, 218; 537 NW2d 603 (1995).

Defendant moved for implementation of the 50/50 parenting time schedule and other relief on January 24, 2017. The motion was originally noticed for hearing on February 1, 2017. Plaintiff filed his motion to implement safeguards during parenting time on February 13, 2017. He certified that it was served on plaintiff by mail on February 13, 2017. Plaintiff originally noticed the motion for hearing on February 22, 2017. Defendant filed an answer on February 17, 2017. On February 15, 2017, defendant's counsel moved to withdraw. The Register of Actions indicates that motion praecipes were filed for March 1, 2017, March 8, 2017, and March 15, 2017. The trial court issued an order sua sponte consolidating these hearing dates for March 1, 2017.

Plaintiff argues that the trial court's sua sponte order violated MCR 3.920(D)(1), which provides that in proceedings concerning a juvenile, "Notice of a hearing must be given in writing or on the record at least 7 days before the hearing except as provided in subrules (D)(2) and (D)(3), or as otherwise provided in the rules." Subchapter 3.900 governs proceedings involving juveniles, i.e., proceedings under the Juvenile Code, namely delinquency proceedings and child protective proceedings. MCR 3.901(A)(1) and (B). The instant action is governed by Subchapter 3.200, for domestic relations actions, including proceedings under the CCA. MCR 3.201(A)(2)(a). Postjudgment custody motions are governed by MCR 2.119. MCR 3.213. MCR 2.119(C)(1) provides that notice of a hearing on a motion must be served at "[a]t least 9 days before the time set for the hearing, if served by mail, or (b) at least 7 days before the time set for the hearing, if served by delivery [to attorney or party] under MCR 2.107(C)(1) or (2)." Plaintiff's motion was served on February 13, 2017, 16 days before the hearing. The trial court's consolidation order did not deprive defendant of sufficient notice. Moreover, defendant not only had an opportunity to respond to plaintiff's allegations, she actually did so.

-8-

Defendant argues that the trial court denied her an opportunity to present testimony in support of her motion for increased parenting time and in opposition to plaintiff's motion. Presumably, defendant refers to the family members who would have testified regarding her conduct with the child during parenting time. As discussed earlier, defendant's motion to implement a 50/50 parenting time schedule was, in substance, a motion to modify the existing custody arrangement by significantly increasing her parenting time. As such, she had the initial burden of demonstrating a change of circumstances or other proper cause before the court was required to proceed to an evidentiary hearing. *Bowling*, 318 Mich App at 569-570. The trial court did not err in determining that she failed to meet this burden. However, with regard to plaintiff's motion to restrict defendant's parenting time, the trial court considered Dr. Agosta's report in addition to plaintiff's statements, but it did not allow defendant to present evidence in her own favor. We are not persuaded that this omission arises to the level of plain error affecting defendant's substantial rights. In view of the parties' longtime entrenched mutual hostility, the trial court reasonably acted on the recommendations of Dr. Agosta, a neutral professional. There is no reasonable likelihood that the statements of defendant's family members would have been anything other than cumulative of defendant's own self-serving statements.

In sum, defendant has not demonstrated that the trial court erred by entering the March 2017 and September 2017 orders denying her motions for increased parenting time. Accordingly, we affirm those orders.[2]

### III. DOCKET NO. 339903

Defendant argues that Judge Langton's July 2017 order reapportioning the GAL's fees was barred by law of the case, collateral estoppel, and res judicata in light of Judge Pezzetti's December 2016 order. This Court reviews de novo whether and to what extent the doctrine of law-of-the-case applies to a court's ruling. *Kasben v Hoffman*, 278 Mich App 466, 470; 751 NW2d 520 (2008). Likewise, "[t]he applicability of legal doctrines such as res judicata and collateral estoppel are questions of law to be reviewed de novo." *Husted v Auto-Owners Ins Co*, 213 Mich App 547, 555; 540 NW2d 743 (1995), aff'd 459 Mich 500 (1999).

"Under the law-of-the-case doctrine, this Court's determination of an issue in a case binds both the trial court on remand and this Court in subsequent appeals." *Augustine v Allstate Ins Co*, 292 Mich App 408, 425; 807 NW2d 77 (2011). "On remand, the trial court may not take action that is inconsistent with the judgment of this Court." *Id*. "Thus, a question of law decided by an appellate court will not be decided differently on remand or in a subsequent appeal in the

---

[2] Because we are affirming the trial court's orders and there is no reason to remand this case to the trial court for further proceedings, it is unnecessary to consider defendant's argument that this case should be reassigned to another judge on remand. In any event, we find no evidence in the record that Judge Langton was biased against defendant, or that reassignment is necessary to preserve the appearance of justice. MCR 2.003(C)(1)(a); *Bayati v Bayati*, 264 Mich App 595, 602-603; 691 NW2d 812 (2004); *Van Buren Twp v Garter Belt Inc*, 258 Mich App 594, 598; 673 NW2d 111 (2003).

same case." *Id*. (citation and quotation marks omitted). "The preclusion doctrines of res judicata and collateral estoppel serve an important function in resolving disputes by imposing a state of finality to litigation where the same parties have previously had a full and fair opportunity to adjudicate their claims." *William Beaumont Hosp v Wass*, 315 Mich App 392, 398; 889 NW2d 745, 749–50 (2016) (citation and quotation marks omitted). "Res judicata applies if "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v Michigan,* 470 Mich 105, 121; 680 NW2d 386 (2004). "Generally, for collateral estoppel to apply, three elements must be satisfied: (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v State Farm Ins Co,* 469 Mich 679, 682-684; 677 NW2d 843 (2004) (quotation marks, citation, and brackets omitted). "Collateral estoppel bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding." *Leahy v Orion Twp,* 269 Mich App 527, 530; 711 NW2d 438 (2006).

Defendant's reliance on these three doctrines is misplaced. Defendant does not cite any authority applying these doctrines to a trial court's revision of its own orders in the *same action*, either by the same judge who issued the previous order or a successor judge. MCR 2.604(A) provides that "an order or other form of decision adjudicating fewer than all the claims, or the rights and liabilities of fewer than all the parties, does not terminate the action as to any of the claims or parties, and the order is subject to revision before entry of final judgment adjudicating all the claims and the rights and liabilities of all the parties."

In *Hill v City of Warren*, 276 Mich App 299; 740 NW2d 706 (2007), the plaintiff property owners sought class certification in an action alleging that their property was damaged by trees planted by the defendant city. *Id*. at 302-304. The trial court denied class certification. Following a series of appeals to this Court and the Supreme Court, our Supreme Court ultimately ruled that the trial court's denial of class certification was not clearly erroneous. *Id*. at 303-304. On remand to the trial court, the plaintiffs filed a "renewed motion for class certification," which the trial court granted. *Id*. at 304. The defendant argued on appeal that the trial court's order was barred by the law-of-the-case doctrine, and also argued that the plaintiffs' renewed motion was, in substance, an untimely motion for reconsideration. *Id*. at 306, 308. This Court held:

> Although the trial court treated the motion as one for reconsideration, plaintiffs did not present it as such. As a general matter, courts are permitted to revisit issues they previously decided, even if presented with a motion for reconsideration that offers nothing new to the court. MCR 2.119(F)(3); *Smith v Sinai Hosp of Detroit,* 152 Mich App 716, 722-723; 394 NW2d 82 (1986). In any event, MCR 2.119(F)(1) explicitly refers to MCR 2.604(A) as "another rule" that "provides a different procedure for reconsideration of a decision . . . ." Under MCR 2.604(A), an order that does not dispose of all issues in a case does not terminate the action or entitle a party to appeal as of right and "is subject to revision before entry of final judgment adjudicating all the claims and the rights and liabilities of all the parties." The court rules therefore give the trial court

explicit procedural authority to revisit an order while the proceedings are still pending and, on that reconsideration, to determine that the original order was mistaken, as the trial court did here. Defendant asserts that because MCR 7.208(A) prevents a trial court from setting aside or amending an order while an appeal from that order is pending, it must not be able to do so after the appeal has been decided and the matter is returned to the trial court. However, filing a claim of appeal only prevents the trial court from amending its orders while the appeal is pending, not after remand. *Wilson v Gen. Motors Corp.,* 183 Mich App 21, 41-42; 454 NW2d 405 (1990). [*Hill*, 276 Mich App at 307.]

This Court further stated that the law-of-the-case doctrine did not preclude the trial court from granting class certification because the trial court's determination that class certification was proper was not contrary to the Supreme Court's ruling that denial of certification did not constitute clear error. *Id*. at 307-309.

In this case, Judge Langton's order did not deviate from any appellate ruling, and under MCR 2.604(A) she was not prohibited from revisiting and revising Judge Pezzetti's non-final order. Accordingly, the doctrines of law-of-the-case, res judicata, and collateral estoppel do not apply.

Defendant also argues that Judge Langton erred by denying her request for an evidentiary hearing to determine the reasonableness of the GAL's requested fees. The July 2014 order expressly gave the GAL sole discretion and authority to reapportion fees based on one party's conduct that disproportionately necessitated the GAL's intervention. Accordingly, an evidentiary hearing would not have served any purpose because the trial court could not make any finding that would require modification of the GAL's reapportionment decision. Judge Langton's comment that defendant did not object to reapportionment on any specific line item indicates that she was open to the possibility of reviewing the GAL's reapportionment on an item-by-item basis, but defendant's failure to raise any specific objection foreclosed this opportunity. Accordingly, Judge Langton did not abuse her discretion by failing to hold an evidentiary hearing.

Affirmed.

/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Cynthia Diane Stephens